■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS MIRANDA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Lonschein, J.), rendered March 19, 1982, convicting him of criminal possession of a controlled substance in the fourth degree and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Giaccio, J.), of that branch of defendant's pretrial motion which sought to suppress certain physical evidence.

Judgment reversed, on the law and the facts, the afore-noted branch of defendant's motion to suppress granted, indictment dismissed, and this case is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

At approximately 8:00 P.M. on May 28, 1981, Dennis O'Dowd, a service manager with Northwest Airlines at Kennedy Airport, received a telephone call from a man identifying himself as Mr. Garcia of the Drug Enforcement Agency. O'Dowd had never previously dealt with Garcia. Garcia told O'Dowd that a package en route to New York as air freight, bearing a certain eight-digit number, contained material of a "suspicious nature". Garcia told O'Dowd to be on the lookout for the package. About two hours later, Garcia again telephoned O'Dowd, stating that he would be unable to send an agent to the cargo terminal. He further told O'Dowd to stall anyone who arrived to claim the package until he could send an agent or agents to the terminal. He gave O'Dowd two telephone numbers where he could be reached.

At approximately 11:00 P.M., the package arrived. O'Dowd took the package to his office and telephoned Garcia. Simultaneously, O'Dowd was informed that defendant had arrived to claim the package. Garcia asked for a description of defendant and, upon receiving it, stated that he was the man they were expecting. Garcia said he would be unable to send anyone to the terminal. He asked O'Dowd to get as much information as he could about defendant and then release the package to him.

O'Dowd related what had occurred to his supervisor, Norman Anderson, who was coming on duty. Anderson went to the customer area and asked defendant if he was waiting for a package from Spokane. Defendant said he was, and presented an airway bill number which matched the number of the package on O'Dowd's desk. Anderson returned to the office and asked O'Dowd what was in the package. When O'Dowd said he did not know, Anderson cut open the package and found therein a small glassine bag of white powder and an invoice addressed to defendant. The substance was described on the invoice as incense. Anderson noticed that the substance had no odor.

Anderson then telephoned the Port Authority police and spoke to an Officer Morrow. He explained the situation and the fact that no one from the Drug Enforcement Agency was available. Morrow said he would send some officers and after a meeting between Anderson and Morrow and his brother officers, the police staked out the cargo building. The package was released to defendant. Defendant made and received telephone calls for about 25 minutes. Then, he got into his automobile and proceeded to leave the cargo area. The police stopped the vehicle and ordered defendant out of his car. After hesitating, defendant got out of the car, simultaneously taking off his jacket and throwing it into the car. Morrow retrieved defendant's jacket. According to Morrow, the door to the glove compartment was "slightly ajar" and he retrieved a package containing a white substance from that area. He also found a package underneath defendant's jacket which Anderson identified as the package defendant picked up from the airline terminal.

Morrow asked defendant for identification. Defendant said it was inside his jacket. While going through the jacket pockets, Morrow retrieved another package. Defendant was transported to the Port Authority police building. The police field-tested the seized packages. At that time, all tests were positive for cocaine. Armed with this information, Morrow obtained a search warrant for the automobile. A further search of the automobile yielded another package containing white powder located in a brown shoulder bag on the rear seat floor.

Eventually, after a chemist's report, it was discovered that only the packages seized from defendant's jacket and the shoulder bag contained cocaine. The package defendant picked up at the cargo terminal and the package in his glove compartment were not narcotics.

With this evidence before it, the suppression court found that there had been probable cause to arrest defendant and that the various packages were properly seized. We disagree.

Essentially, the facts proffered to support the arrest consist of (1) Drug Enforcement Agency Agent Garcia's statement that the cargo package was "suspicious", and (2) Anderson's observation that the material therein, labeled as "incense", had no odor.

In order for there to be probable cause to arrest it must reasonably appear that it is more likely than not that a crime has taken place and that the one arrested is the perpetrator. Conduct equally consistent with guilt or innocence will not suffice (*People v Carrasquillo*, 54 NY2d 248; *People v Elwell*, 50 NY2d 231; *People v De Bour*, 40 NY2d 210; *People v Corrado*, 22 NY2d 308).

Garcia's statement that the package was suspicious does not provide probable cause to believe it contained contraband. First of all, Garcia's basis of knowledge for making such a statement is unclear. (See *People v Elwell, supra.*) O'Dowd testified at the suppression hearing that he "believe[d]" Garcia said that the package had been opened and resealed in Spokane. O'Dowd's equivocal testimony in this regard does not establish that such a search took place or that contraband was found,* nor did he state that the Port Authority police were made aware of this "belief". In any event, Garcia's statement that the package was suspicious, without more, provided the police with just that — a mere suspicion — not probable cause.

The People urge that Anderson's observation of the contents of the package as odorless "incense" provided independent verification of Garcia's suspicion. We disagree. We first note that no policeman saw the package until after defendant's arrest. O'Dowd and Anderson were not shown to have any expertise in

---

* At trial, defense counsel was given *Rosario* material of Agent Garcia, which apparently indicated that Garcia knew before the airplane arrived in New York that the substance in the cargo package was not a controlled substance. In view of our finding that probable cause to support defendant's arrest was wanting we need not pass on the propriety of the trial court's denial of defendant's motion to renew the suppression motion. Nor do we reach the question of whether the prosecutor's failure to submit Garcia's testimony to the suppression court for a determination of whether it should have been made available to the defense at the hearing violated due process (see *People v Geaslen*, 54 NY2d 510).

recognizing narcotics. Anderson's observation that the substance was odorless did not necessarily establish that it was contraband, nor indeed did it even establish that it was not incense.

In view of the foregoing, we cannot agree that the police could reasonably conclude that it was more likely than not that a crime was being committed since the facts they knew were as equally consistent with innocence as with guilt.

Since the arrest was improper, the search of defendant's effects and automobile cannot be sustained and suppression should have been granted (see *Wong Sun v United States,* 371 US 471).

We reach no other issue. Titone, J. P., Gibbons, Bracken and Weinstein, JJ., concur.