■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES JOY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Giaccio, J.), rendered March 23, 1983, convicting him of attempted burglary in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of defendant's omnibus motion as sought suppression of physical evidence seized from defendant, certain identification testimony, and statements made by defendant.

Judgment reversed, on the law and the facts, plea vacated, those branches of defendant's omnibus motion which sought suppression of physical evidence seized from defendant and the complainant's showup identification of defendant granted, and case remitted to the Supreme Court, Queens County, for further proceedings.

The primary issue on this appeal involves the denial of those branches of defendant's omnibus motion that sought suppression of certain evidence. The suppression hearing testimony of Police Officer Phillip Orapallo and the complainant, Lilly Teitelbaum, established that at about 2:00 P.M. on July 6, 1982, Police Officer Orapallo and his partner, both in plainclothes and in an unmarked police vehicle, first observed the defendant on the street in an area which had been plagued by frequent burglaries. Defendant was carrying a yellow plastic shopping bag sometimes issued by supermarkets. He was "perspiring profusely" on this summer day, walking in a "hurriedly [sic] fashion" and "kept looking over his shoulder towards the back of him". The officers did not stop their vehicle but continued to observe the defendant through the rear window of their car. As the defendant walked away from the officers' car, he continued looking over his shoulder. The officers then pulled their vehicle alongside the defendant. The officers exited their vehicle and identified themselves as police officers.

Officer Orapallo proceeded to question defendant. In response to the officer's questioning, defendant gave his name and said that he was going to his girlfriend's house. When asked where he lived, defendant replied "68th". There was no address in that area that could be described as "68th". When asked to be more specific about his address, defendant did not respond. Defendant was asked whom he lived there with, and he said a "friend"; and when asked the name of the friend, he gave a woman's name. When the officer again asked for the address, defendant again said "68th", "I can't remember it. I don't know". Defendant then placed his plastic shopping bag on the sidewalk. Officer Orapallo heard a metal-to-metal sound as the bag hit the pavement. The top of the bag fell open, and the officer could see jewelry and coins in the bag. When asked whose jewelry it was, defendant said it belonged to his girlfriend. When asked to specifically describe some of the property in the bag, defendant gave "evasive answers". On cross-examination, Officer Orapallo stated that when defendant was asked if he could describe some of the property in the bag, the defendant said "No". At that point, Officer Orapallo gave

defendant his *Miranda* rights and placed him under arrest for possession of stolen property. At the precinct, the defendant was searched and a screwdriver was found, the basis for an additional charge of possession of burglar's tools.

Two hours after defendant's arrest, Officer Orapallo heard a radio report concerning a burglary at the home of Lilly Teitelbaum located near where defendant had been arrested. Teitelbaum came to the precinct and identified the property found in the shopping bag which had been seized when defendant was arrested. She told Officer Orapallo that she had seen three men "loitering" near her home at about 11:30 A.M. that day. Teitelbaum testified that while she was driving her car, she had seen three men for about three seconds on the street. The men were not doing anything but walking together and one of them had a shopping bag. She slowed her car to look at the men because she did not think they belonged there. She recalled that the three men were wearing polo shirts but she could not recall if they had on shorts or trousers; they were about "25, 20, 30 years old". After she saw the men, she went into her house for about half an hour to an hour. Thereafter, when she went out shopping, she did not see the three men, but upon her return two or three hours later, she found that her house had been burglarized.

Approximately two hours after defendant's arrest but about 4½ hours after seeing the three men, Teitelbaum was allowed to look into a room wherein defendant was sitting on a bench, in the presence of two or three officers. Teitelbaum identified the defendant as one of the men she had seen earlier in the day.

After the hearing, Criminal Term denied suppression of defendant's statements to Officer Orapallo, and the physical evidence seized from the defendant. Further, the court did not suppress the showup identification testimony of the complainant, and upon defense counsel's subsequent objection, the court refused the People's request to make a determination on whether there was an independent source which would support an in-court identification by the complainant.

Thereafter, defendant pleaded guilty to attempted burglary in the second degree, in full satisfaction of the indictment charging him with burglary in the second degree, grand larceny in the third degree, criminal possession of stolen property in the second degree, and criminal mischief in the fourth degree.

Initially, we find that Criminal Term properly denied so

much of defendant's omnibus motion as sought to suppress his statements to Officer Orapallo. There is no basis for disturbing Criminal Term's conclusion that under the circumstances here, the officers properly approached the defendant to make a brief limited inquiry. "The encounter here was devoid of harassment or intimidation. It was brief * * * and the questions were circumscribed in scope to the officers' task as * * * patrolmen * * * Moreover, the attendant circumstances were sufficient to arouse the officers' interest" *(People v De Bour,* 40 NY2d 210, 220). The encounter occurred in an area known for its high incidence of burglaries and only after the officers had observed for a period of time the defendant walking hurriedly on the street, continually looking over his shoulder. "In evaluating the [initial] police action in light of the combined effect of these factors we conclude that rather than being whimsical it was reasonable" *(People v De Bour, supra,* at p 220; *see, People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023). Contrary to defendant's further contention there is no indication that prior to his actual arrest, the defendant was in custody. No claim is made that defendant protested the questioning or asked to be permitted to proceed on his way. While Officer Orapallo testified that he would not have allowed defendant to leave at the time he initially stopped him, the standard to be applied is what a reasonable man, innocent of the crime, would have believed had he been in the defendant's position *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). The subjective intent of the officer to detain an individual is irrelevant except insofar as it is conveyed to the individual *(see, United States v Mendenhall,* 446 US 544, 554, n 6, *reh denied* 448 US 908; *People v Johnson,* 91 AD2d 327, *affd* 61 NY2d 932). Here, the officers did not approach the defendant with their guns drawn, nor was there any suggestion of threats or of physical or constructive restraint. Since the defendant was not subjected to custodial interrogation, the officer's failure to read to the defendant his *Miranda* rights does not warrant suppression of defendant's statements *(cf. People v Morales,* 65 NY2d 997).

We disagree, however, with Criminal Term's determination that suppression of the physical evidence, the items in the shopping bag and the screwdriver seized from defendant, was not warranted. Upon being approached by the police officers, the defendant did not continue to walk but stopped and responded to their questions. While defendant's answers may not have been totally responsive to the officers' questions, nevertheless, defendant's conduct, which was "equally consis-

tent with guilt ·or innocence will not suffice" in order to support a finding of probable cause for his arrest *(People v Howard, supra; People v Miranda,* 106 AD2d 407, 409). The fact that defendant did not give a complete address nor describe the contents of the shopping bag is not so unusual in light of his statements that he lived with a woman friend and that the contents of the bag belonged to his girlfriend. There is no support in the record for Officer Orapallo's conclusory statement, objected to by defense counsel, that defendant gave "evasive answers". In light of the fact that at the time of the arrest, the officers had no knowledge that the items in the shopping bag were the fruits of any crime, at best the circumstances "justified the inquiry made and would have justified the officers in keeping defendant under observation" *(People·v Howard, supra,* at p 590; *cf. People v Carrasquillo,* 54 NY2d 248). The facts of this case are distinguishable from those in *People v Williamson* (107 AD2d 727), wherein this court held that the defendant's responses to a proper police inquiry elevated the encounter to one which supported a finding of probable cause for an arrest and limited search for weapons. In the instant case, defendant's arrest was unlawful, and, accordingly, the physical evidence seized from the shopping bag and the defendant's person should have been suppressed *(see, Wong Sun v United States,* 371 US 471).

In addition, we agree with defendant that the complainant's identification of him at the precinct should have been suppressed as unnecessarily suggestive *(see, People v Rogers,* 81 AD2d 980; *People v Mercado,* 63 AD2d 720). The showup occurred after the complainant had already identified as hers the items found in the shopping bag seized from the defendant and "no exigent circumstances appear in the record to justify a showup" *(People v Rogers, supra).*

However, while Criminal Term did not reach the issue of whether or not the complainant's proposed in-court identification of defendant would be based upon the tainted precinct identification because Criminal Term did not find the precinct showup objectionable, nevertheless, the record is sufficient for us to determine this issue *(see, e.g., People v Acosta,* 74 AD2d 640; *People v Cruz,* 65 AD2d 558). We find that an in-court identification of defendant by the complainant is supported by her independent recollection and is not related to the suggestiveness of the showup. Such in-court identification testimony would be admissible *(see, United States v Crews,* 445 US 463; *People v Pleasant,* 54 NY2d 972, *cert denied* 455 US 924).

Under the circumstances, there is a reasonable possibility

that Criminal Term's error in denying so much of defendant's omnibus motion as sought suppression of the physical evidence and the pretrial showup identification testimony contributed to the defendant's guilty plea. Therefore, the plea must be vacated *(see, People v Coles,* 62 NY2d 908; *People v Grant,* 45 NY2d 366, 379-380; *People v Riddick,* 110 AD2d 787; *People v Gregory,* 90 AD2d 506).

In view of this court's vacatur of defendant's guilty plea, it is not necessary to address the other issues raised by defendant with regard to his plea and sentence. Mangano, J. P., Gibbons, Niehoff and Lawrence, JJ., concur.