OPINION OF THE COURT
Irving Rosen, J.
The defendant, Nelson Rotger, is charged with two counts of *460 operating a motor vehicle under the influence of alcohol (Vehicle and Traffic Law § 1192 [2], [3]) and aggravated unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 511 [1]). A breathalyzer hearing was ordered and held on January 18, 1994, January 20, 1994 and February 25, 1994. Two witnesses, Police Officer Felix Vazquez and Auxiliary Police Officer Arnaldo Colon, Jr., testified for the People. The defendant called no witnesses. I find the testimony of Officer Vazquez and Auxiliary Officer Colon credible.
FINDINGS OF FACT
On May 14, 1993, Auxiliary Officer Colon and his partner were in full uniform on foot patrol on the corner of Westchester Avenue and Southern Boulevard when he saw a motor vehicle make a right-hand turn through a steady red light. A few seconds later they heard a crash. Auxiliary Officer Colon observed that the same vehicle that had just ran the red light had apparently impacted with two parked cars. Auxiliary Officer Colon and his partner immediately ran to the scene.
Upon arriving at the scene and before approaching the vehicle Auxiliary Officer Colon looked at his watch, which indicated it was 7:45 p.m. (While on patrol Auxiliary Officer Colon checked the accuracy of his watch by calling central [central is central dispatcher, the radio station where they call all police officers].) Auxiliary Officer Colon called (radioed) central right after arriving at the scene. At the scene, Auxiliary Officer Colon, observing the driver (hereinafter defendant) of said vehicle trying to start the vehicle, ordered him to get out of the vehicle and was ignored. After the third time Auxiliary Officer Colon ordered the defendant to get out of the vehicle the defendant stopped trying to start the vehicle and exited it. The defendant stumbled when he got out of the vehicle. Auxiliary Officer Colon observed open and closed cans of beer in the vehicle, that the defendant’s breath smelled like alcohol and he had bloodshot eyes. This was Auxiliary Officer Colon’s first observation of someone he believed to be driving while under the influence of alcohol. The defendant was told by Auxiliary Officer Colon to put his hands on the vehicle, an instruction that was ignored until his partner took out his nightstick. Auxiliary Officer Colon at 7:50 p.m., approximately five minutes after his arrival at the scene, handcuffed the *461 defendant "for his safety” due to the fact that he assumed the defendant was under the influence of alcohol. He told the defendant that he was being held for possible drunk driving. Defendant, however, was not told he was under arrest.
Thereafter, while on patrol, Police Officer Felix Vazquez responded to a radio transmission of a traffic accident at the corner of Westchester Avenue and Hoe Avenue. Upon arriving at the scene Officer Vazquez commenced an investigation which included conversing with Auxiliary Officer Colon who had handcuffed the defendant. Officer Vazquez observed that the defendant had a strong smell of alcohol on his breath, that his speech was slurred, his eyes bloodshot and watery and that he swayed when he walked. The handcuffs were removed from the defendant by Officer Vazquez in order to administer an alcosensor test. The alcosensor test was given at 8:00 p.m. and the defendant blew a .21 reading. The defendant was then rehandcuffed by Officer Vazquez at 8:04 p.m., which was noted in his memo book.
Defendant was then taken to the 41st Police Precinct for processing (filling out of the complaint report, arrest forms and fingerprinting of the defendant). Defendant was then transported to Highway 1 (Highway 1 is the designated place for conducting breathalyzer tests in Bronx County). Officer Vazquez commenced filling out the 127 report (intoxicated driver examination) at Highway 1 at 9:36 p.m. It took Officer Vazquez five minutes to obtain pedigree information from the defendant and record it. Officer Vazquez then read the defendant his Miranda rights which took three minutes. Immediately thereafter Officer Vazquez began to interrogate the defendant. It took about five minutes to obtain and record the pertinent information on the first page of the interrogation questions contained on the 127 report. Officer Vazquez then filled out the observation checklist on the top of the second page of the 127 report which took about one minute. The defendant was then given a pupil reaction test by Officer Vazquez which took between three and five minutes. The defendant then consented to take a breathalyzer test and submitted to it after being advised of the consequences of a refusal to do so. Two minutes elapsed from the point of commencement of the reading to the defendant of the consequences of a refusal until the defendant physically gave his breath sample.
*462 CONCLUSIONS OF LAW
THE TWO-HOUR RULE OF VEHICLE AND TRAFFIC LAW
§ 1194 (2) (a) (1) AND (2)
A. The Time of Commencement
The Appellate Division in People v Fenti (175 AD2d 598, 600) stated that to ascertain whether a person is "in custody”: "The test to be applied in reaching that determination is 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position’ (People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851; see also, People v Hicks, 68 NY2d 234, 240). The subjective belief of a police officer is not controlling in determining when an arrest occurs and the fact that the officer may have prevented defendant from leaving the scene had she attempted to leave is not relevant in making the determination except to the extent that his belief is conveyed to defendant (see, People v Crocker, 125 AD2d 132, 134; People v Joy, 114 AD2d 517, 520).”
The defendant’s counsel has asserted in defendant’s memorandum of law that Auxiliary Officer Colon is a peace officer authorized to make arrests. This is incorrect. "Auxiliary police volunteers in New York City are neither police officers nor peace officers. By present State law, they secure the powers of peace officers only during 'a period of attack by enemy forces’ (CPL 2.10, subd 26; see, also, L 1951, ch 784, § 105). At all other times, auxiliary police officers have no arrest powers beyond that of private citizens (see CPL 140.30-140.40).” (People v Luciani, 120 Misc 2d 826, 829.) Notwithstanding the fact that he was not a police officer or peace officer in the technical sense, he was in full uniform with all the accouterments of an officer of the law (except for a firearm). "In the public’s mind, auxiliary police officers are cloaked with the authority of government. In actuality, they are.” (People v Luciani, 120 Mise 2d 826, 831.) To hold that the defendant was not in custody or that Auxiliary Officer Colon had not effected an arrest would fly in the face of reality notwithstanding Auxiliary Officer Colon’s claim that he is not authorized to make arrests. The court therefore finds that the defendant was placed under arrest (taken into custody) when Auxiliary Officer Colon handcuffed him, since defendant could reasonably believe from the circumstances that he was being taken into custody and that his liberty was significantly restricted.
*463 The court further finds that the defendant was placed under arrest (taken into custody) at 7:50 p.m. on May 14, 1993, as Auxiliary Officer Colon stated at the hearing that he looked at his watch upon arriving at the scene of the traffic accident, that it read 7:45 p.m. and that while on patrol previously he had checked his watch with central dispatch. He further stated that approximately five minutes later he placed his handcuffs on the defendant. The defendant asserts that the accident and subsequent arrest occurred at an earlier time and used estimates of time sequences given by Officer Vazquez working backward from the time Officer Vazquez placed his handcuffs on the defendant at 8:04 p.m. The court is compelled to give more credence to the times stated by Auxiliary Officer Colon because his time sequence is based upon his watch which was checked. On the other hand, Officer Vazquez admits that he does not know what time he arrived on the scene and his reconstruction of the time sequence is based on estimates.
However, a careful reading of the applicable statute indicates that for purposes of the so-called "two-hour rule” the measuring point commences in the case at bar at 8:00 p.m. and not 7:50 p.m. The pertinent sections of Vehicle and Traffic Law § 1194 read as follows:
"1 * * * (5) Field testing. Every person operating a motor vehicle which has been involved in an accident or which is operated in violation of any of the provisions of this chapter shall, at the request of a police officer, submit to a breath test to be administered by the police officer. If such test indicates that such operator has consumed alcohol, the police officer may request such operator to submit to a chemical test in the manner set forth in subdivision two of this section.
"2. Chemical tests, (a) When authorized. Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer with respect to a chemical test of breath, urine or saliva or, with respect to a chemical test of blood, at the direction of a police officer:
"(1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section eleven hundred ninety-two of this article and within two *464 hours after such person has been placed under arrest for any such violation, or
"(2) within two hours after a breath test, as provided in paragraph (b) of subdivision one of this section, indicates that alcohol has been consumed by such person and in accordance with the rules and regulations established by the police force of which the officer is a member.” (Emphasis supplied.)
A review of the legislative history of the above-cited statute provides no guidance as to which event is to be used as a starting time for the administration of a chemical test when a person is both arrested and given an alcosensor test. Since there is no case law interpreting the language of the statute pertaining to this issue the court must utilize the commonsense meaning of the language used while at the same time giving import to each word used. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 97, 98.) The word " '[o]r’, when used in a statute, is a disjunctive particle indicating the alternative sense, and often connects a series of words or propositions, presenting a choice of either.” (Matter of Mossey v Peru Cent. School Dist., 132 Misc 2d 999, 1002.)
The wording of the statute leads the court to the conclusion that it was the intention of the Legislature that when a defendant is both arrested and given an alcosensor test, the event that is to be used as the starting time for the subsequent administering of a chemical test in compliance with the "two-hour rule” is the giving of the alcosensor test. It is irrelevant whether the alcosensor test is administered prior or subsequent to the arrest. By the placement of the paragraph pertaining to the alcosensor test (an event that may never occur) after the paragraph pertaining to an arrest the Legislature evinced an intent, using natural language construction, that when an alcosensor test is given it will be the measuring event, not the arrest.
B. The Time of the Breathalyzer Test
With respect to the time the breathalyzer was administered the court notes that there is a discrepancy. Police Officer Lichtbraun, who administered the breathalyzer test, was seen on the videotape introduced into evidence as looking at his watch and announcing, just before advising the defendant of the consequences of a refusal to take a breathalyzer test, that it was 9:36 p.m. However, Officer Vazquez stated that he *465 looked at his watch prior to commencing to fill out the 127 report (the defendant being present and cooperating in its compilation) and it read 9:36 p.m. Since the defendant could not be doing two things at precisely the same time and the court has no way of determining which officer’s watch was accurate the court must view the evidence pertaining to the time of administering the breathalyzer that is most favorable to the defendant. Following this constraint, the court views Officer Vazquez’s watch as correct. Therefore the time of the defendant’s taking of the breathalyzer test is consequently later than that indicated by Officer Lichtbraun since it is undisputed that the defendant was with Officer Vazquez when he commenced filling out his paperwork at Highway 1 at 9:36 p.m. Officer Vazquez estimated that commencing at 9:36 p.m., 19 minutes elapsed (5 minutes to obtain pedigree; 3 minutes to read defendant his Miranda rights; 5 minutes to obtain and record answers to interrogation questions on first page of 127 report; 1 minute to fill out observation checklist on second page of 127 report; and 3 to 5 minutes to complete pupil reaction test) before Officer Lichtbraun commenced reading (the court concludes this to be 9:55 p.m.) the defendant the consequences of a refusal to take the breathalyzer test. Two minutes later at 9:57 p.m. the defendant completed the breathalyzer test. Accordingly, the court concludes that the breathalyzer test was administered within the requisite two-hour period, to wit: 1 hour and 57 minutes after defendant’s taking the alcosensor test.
C. The Issue of Consent
The court having previously concluded that the breathalyzer test was administered within the two-hour period required pursuant to Vehicle and Traffic Law § 1194 (2) (a) (1) and (2) it is unnecessary to determine whether the "express consent” of a defendant to submit to a breathalyzer test renders the two-hour rule inapplicable.
CONCLUSION
Accordingly, for the reasons previously stated, the defendant’s motion to suppress the results of the breathalyzer test is denied.
[Portions of opinion omitted for purposes of publication.]