■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN A. GILBO, Appellant. [624 NYS2d 659] —Yesawich Jr., J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered September 20, 1993, upon a verdict convicting defendant of the crimes of burglary in the third degree and criminal mischief in the third degree.

At approximately 1:50 A.M. on August 1, 1992, officers of the St. Lawrence County Sheriff's Department, having been notified of suspicious activity in the Town of Lisbon at the Lisbon General Store by a family that lived in the vicinity, deter-

mined that a burglary had occurred. Although the perpetrators had fled on foot, the family members reported having seen a small, dark-colored pickup truck, with lights mounted on a roll bar and a single occupant, driving repeatedly past the store, at a slow speed, after the burglary; one of the Sheriff's Deputies had seen a similar truck pass by. Responding to a call in the City of Ogdensburg, Village of Potsdam Officer Michael Knowlton observed a vehicle matching this description, which he had received over the radio, parked by the side of a road, in this rural area, about one half mile from the scene of the burglary, and at about 2:50 A.M., upon their return from Ogdensburg, Knowlton and Deputy Sheriff Dewey La Valley approached the vehicle to investigate.

The officers found defendant alone in the vehicle, sitting on the passenger side. The keys were in the ignition. When asked why he was there, defendant replied that he had been driving around with friends, the truck had broken down and his companions had gone for help. After contacting Investigator Timothy Amo, who was apparently directing the investigation at the scene, by radio, La Valley asked defendant to accompany him to the store. Without uttering a word, defendant exited the truck and got into the rear seat of the police vehicle.

At the scene of the burglary, Amo questioned defendant and two other suspects who had been found walking in the vicinity. Answering Amo's inquiries, defendant stated that he had done nothing wrong, and that he had been out riding with Gerald Compo, one of the other suspects, when the truck broke down and Compo left to get assistance. Earlier Compo had told Amo an entirely different story. All three suspects, defendant, Compo and Compo's brother, were informed that they were not under arrest and were free to go; significantly, although the Compo brothers left, defendant, who remained in the back seat of La Valley's vehicle, did not.

Knowlton, who had a police dog, began searching the area for evidence. After waiting in the car with defendant for about 20 minutes, La Valley set off to find Knowlton, and came upon him almost immediately. Taking from Knowlton the fruits of his search, a black driving glove and a shirt, La Valley took defendant back to the pickup truck to secure it against theft; as he removed the keys from the ignition, La Valley noticed a similar glove on the floor of the pickup. With the truck secure, he took defendant back to the store and turned over to Amo the glove and shirt that Knowlton had found. At this point, Amo informed defendant that he was

under arrest and directed La Valley, in whose vehicle defendant remained seated, to return to the truck to attempt to start it, to retrieve the glove from the floor and to search for any other evidence that might be found therein.

Defendant, who was subsequently convicted after a jury trial of burglary and criminal mischief, argues, *inter alia,* that County Court improperly denied his motion to suppress the glove, a T-shirt that was found in the truck and the fact that La Valley started the truck without any difficulty. It is defendant's contention that these items of evidence were uncovered as the result of an illegal de facto arrest. We disagree.

Given the time of night, the proximity of the parked truck to the scene of a burglary, the fact that it matched the description of the vehicle that had been moving suspiciously around the store immediately thereafter, and his knowledge of defendant's previous conviction and suspected involvement in several other burglaries, La Valley's suspicion that defendant was implicated in the crime that had occurred less than an hour before was based on articulable facts and reasonable inferences therefrom, and hence was justifiable *(see, People v Bennett,* 189 AD2d 924, 925; *People v Buchta,* 182 AD2d 853, *lv denied* 80 NY2d 829; *People v Buyce,* 152 AD2d 857, 858-859, *lv denied* 74 NY2d 845; *People v Rivera,* 124 AD2d 682). Under these circumstances, his brief detention and transportation to the nearby crime scene for further questioning by Amo, the investigator in charge, was not unreasonable *(see,* CPL 140.50 [1]; *People v Hicks,* 68 NY2d 234, 240-242; *People v Pinkney,* 156 AD2d 182, *lv denied* 75 NY2d 870; *People v Smith,* 138 AD2d 972, 973-974, *affd* 73 NY2d 961).

Defendant stresses that he was "caged" in the back of a police vehicle while the K-9 search was conducted and evidence gathered *(see, People v Freeman,* 151 AD2d 967). This assertion, that he was unable to leave, is belied by Amo's testimony that the rear door of the car was open when he was questioning defendant, during which time the latter was expressly told that he was not under arrest and was free to go, and by the further fact that the car door was "opened and closed all night long". Notably, defendant had not been handcuffed or otherwise restrained from leaving. Inasmuch as the other suspects, who were similarly informed of their status, actually left the scene on foot, it can hardly be said that a reasonable person in defendant's position, innocent of any wrongdoing, would not have also believed that he was free to leave *(see, People v Hicks, supra,* at 240; *People v Joy,* 114 AD2d 517, 520).

Accordingly, we hold the view that there was no involuntary detention after the brief questioning by Amo, which, as we have noted, was justified, until defendant was actually placed under arrest. Because that arrest did not occur until after the glove was found in the truck (an event which clearly furnished probable cause to believe that defendant had been involved in the burglary), the subsequent search of the truck for further evidence was not improper *(see, People v Belton,* 55 NY2d 49, 55; *People v Heller,* 99 AD2d 787, 788).

Defendant also claims that County Court acted improvidently in refusing to preclude the trial testimony of six witnesses who had previously testified at a preliminary hearing. The predicate for this contention is that the People, having lost the only tape recording of that hearing, were unable to satisfy their *Rosario* obligation to produce the witnesses' prior testimony. Where, as here, a witness's prior statement cannot be produced because it has been inadvertently lost or destroyed, the court need not preclude the testimony if it is able to fashion another appropriate sanction that will adequately mitigate the prejudice caused by the missing evidence *(see, People v Martinez,* 71 NY2d 937, 940). Under the circumstances, County Court did not abuse its discretion in finding that an adverse inference charge satisfied this requirement.

The other arguments advanced by defendant have been considered and been found equally unavailing.

Cardona, P. J., Crew III, White and Casey, JJ., concur. Ordered that the judgment is affirmed.