■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v RAYMOND G. GLOVER, Appellant-Respondent. [626 NYS2d 595] —Mercure, J. Appeals (1) from a judgment of the County Court of Tompkins County (Sherman, J.), entered April 27, 1994, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and forgery in the second degree, and (2) from two orders of said court, rendered March 15, 1994 and April 27, 1994, which, *inter alia,* granted defendant's motion to set aside the jury's verdict convicting defendant of the crime of criminal possession of a controlled substance in the second degree and dismissed count one of the indictment.

The primary issue raised on these appeals is whether County Court erred in refusing to suppress evidence of drugs found in defendant's backpack. Because we conclude that County Court did so err, we shall grant defendant's suppression motion and dismiss the second count of the indictment. But for the fact that County Court already dismissed the first count of the indictment based upon *People v Ryan* (82 NY2d 497), suppression of the evidence obtained as a result of the illegal search of defendant's backpack would require dismissal of that count as well.

The following undisputed account of the underlying facts emerged from the suppression hearing conducted by County Court. On July 6, 1993, the Police Department of the City of Ithaca, Tompkins County, received a citizen complaint concerning a threat that had been made against the complainant by her former boyfriend. The complainant advised the police that the ex-boyfriend, whom she identified by name, resided in the West Palm Beach, Florida, area. He telephoned her that afternoon, advising her that he was in the Washington, D.C., area, that he and his cousin were en route to Ithaca via a Greyhound bus and would be arriving around midnight. The ex-boyfriend was described as being a black male, age 21, five feet, six inches tall and 145 pounds in weight, with a shaved head and a scar from a bullet wound on the right side of his scalp. The complainant stated that he would be armed, probably with a semiautomatic handgun. The cousin was described as being a black male, six feet tall and 190 pounds in weight, with a shaved head and gold front teeth.

Based upon the foregoing, the police contacted the local Greyhound bus station and determined that, although there was no bus due in at around midnight, a bus from New York City was due to arrive at approximately 6:00 A.M. the next morning. The police arranged to meet that bus, on which defendant and a companion, Terrance Carney, both black males in their 20s, happened to be passengers. Shortly after disembarking, the two of them were approached by three police officers, who explained that they matched the descriptions of two suspects the police were trying to locate. The officers asked for identification and permission to conduct a pat frisk. Defendant and Carney both gave the police their names (defendant gave what turned out to be a false name) but indicated they had no identification. Further, defendant refused to consent to a pat down. The police nonetheless frisked defendant and a bag he was carrying on his back and found no weapons. In the absence of evidence to support a reasonable suspicion that defendant and Carney were the suspects, the police let them go on their way.

The police then discussed the matter briefly and reread the descriptions of the suspects set forth in the written complaint. Noting the reference to gold teeth, the police recalled that defendant and Carney each had gold teeth or gold fillings. Based upon this information, they decided to stop defendant and Carney a second time. Arrangements were also made to have the complainant transported to the scene to see if she could identify defendant and Carney. The police intercepted

the two on a nearby street and asked them if they would be willing to "hang out" and await the complainant's arrival. Although Carney had no objection, defendant declined. He was then advised that he had no choice in the matter. The police further requested that the two remove their backpacks and place them on the ground for the safety of all involved. Again, defendant refused but then submitted to a command that he remove the backpack. Defendant let the bag be removed from his back and at the same time began running down the street. While one police officer chased defendant, another began searching the contents of his backpack, allegedly for the officers' protection. The search revealed the drugs forming the basis for the first two counts of the indictment. The third count, charging forgery in the second degree, stems from the fact that, following his apprehension and arrest, defendant signed a false name on the fingerprint card.

We begin our analysis by emphasizing the near absence of distinguishing characteristics supporting a conclusion that defendant and Carney were the suspects sought by the police. Defendant, who was the shorter of the two, weighed 190 to 200 pounds, substantially in excess of the 145 pounds attributed to the complainant's ex-boyfriend. Further, because the police failed to ask defendant and Carney to remove their headgear, they were unable to ascertain whether either had a shaved head (although it appears that neither did) or whether defendant had a scar on the right side of his scalp. Finally, there is no evidence that defendant carried a weapon or that Carney had gold front teeth. We note that, although the People attach considerable significance to evidence that defendant may have had a gold upper tooth, complainant's report made no indication that the shorter suspect had any gold teeth. It was the cousin, the far taller of the two suspects, who was reported to have gold front teeth.

Although we have no doubt that the police had the right to approach and request information of defendant and Carney (see, People v Hollman, 79 NY2d 181) and, because the complainant's ex-boyfriend was reported to be armed and extremely dangerous, there was an arguable basis for the initial pat down (see, People v Buyce, 152 AD2d 857, lv denied 74 NY2d 845), we perceive no predicate for the far more intrusive second stop. To the contrary, given that defendant and Carney did not fit the particularized description provided by the complainant and in the absence of temporal or geographic proximity to the commission of any crime, there was no justification for the type of detention authorized by People v

*Hicks* (68 NY2d 234) *(cf., People v Gilbo,* 214 AD2d 771; *People v Camacho (Molina),* 207 AD2d 735, *lvs denied* 84 NY2d 906, 1013). Nor was there a "founded suspicion that criminality [was] afoot" so as to justify a common-law inquiry *(People v Hollman, supra,* at 191). Further, there was no justification for the subsequent search of defendant's backpack. We need hardly point out the fallacy of the position that, after defendant ran away, it was necessary to search the bag for the protection of the police officers, and it is clear that defendant's action in dropping the backpack was not a calculated, voluntary abandonment, but was, rather, a spontaneous reaction to improper police conduct *(cf., People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969). Accordingly, the drugs should have been suppressed and the first two counts of the indictment dismissed *(see, People v Robbins,* 83 NY2d 928, 930; *People v Hollman, supra).*

As a final matter, we view defendant's subsequent conduct in affixing a false inscription to the signature card as a wholly independent affirmative act unaffected by the taint of defendant's illegal arrest *(see, People v Boodle, supra; People v Manning,* 199 AD2d 621, *lv denied* 83 NY2d 855; *People v Grant,* 164 AD2d 170, 175, *appeal dismissed* 77 NY2d 926). Under the circumstances, we discern no basis for vacating defendant's conviction on the third count of the indictment.

Mikoll, J. P., White, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by reversing so much thereof as denied defendant's motion to suppress evidence obtained as a result of the search of his backpack; said motion granted and second count of the indictment dismissed; and, as so modified, affirmed. Ordered that the appeals from the two orders are dismissed, as moot.