OPINION OF THE COURT
Kaye, J.
We now answer the question reserved in People v Brnja (50 *237 NY2d 366, 369): in the absence of probable cause, whether and when it is permissible for the police, having made a lawful stop, to detain the suspect and transport him to the crime scene for possible identification.
Shortly after 4:00 a.m. on November 12, 1981, Police Officer Murray Wright and his partner heard a radio report that a holdup had occurred at a nearby factory. As they headed toward the factory in their patrol car, another broadcast seconds later identified the robbers as two black men, both about five-feet five-inches tall, in a green Pontiac with black trim. At approximately that moment, at an intersection about a quarter mile from the factory, the officers saw two black men in a grey and black Buick sedan, turning out of the street near the factory, with no other traffic at the intersection. Both men appeared to Wright to be "sitting low in their seats”, indicating their height. Suspecting that they might be the robbers, the officers pulled them over.
Upon approaching the car, Wright (a police officer for 15 years) observed that both men seemed about five-feet five-inches tall. Asked where they had been, they responded that they were coming from work at American Brass, which Wright knew was not in the area, and in fact was miles away in the opposite direction. The officer then ordered the men out of the car and patted them down for weapons. He told them about the robbery, that he was going to take them to the factory for possible identification; he intended to release them if they were not identified. The passenger got into the back seat of the patrol car while defendant, the driver, first went to park the car nearby and then also got into the patrol car. Neither was handcuffed, and both accompanied the police without objection. There is no evidence that guns were drawn at any point. No additional questions were asked. Less than a minute later the patrol car arrived at the factory — these were the first police officers on the scene — where three of the victims identified both suspects. They were then placed under arrest, and they and the car were searched, revealing weapons, as well as other implements and fruits of the crime. In Wright’s estimation, approximately 10 minutes had elapsed between completion of the holdup and the identification.
While defendant — convicted after a jury trial of first degree robbery and related offenses — below challenged also the showup and the automobile search, on this appeal only the stop, and the subsequent detention and transportation to the *238 crime scene, are in issue.[1] We conclude that both were permissible and therefore affirm the conviction.
The warrantless stop and frisk were a seizure violative of the State and Federal Constitutions (NY Const, art I, § 12; US Const 4th Amend) unless based on reasonable suspicion of criminal activity (CPL 140.50), meaning " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion’ ”. (People v Ingle, 36 NY2d 413, 420; see also, People v Cantor, 36 NY2d 106, 113; Terry v Ohio, 392 US 1.) Both courts below found the stop and frisk supported by the officer’s reasonable suspicion that defendant committed the robbery. Reasonable suspicion involves a mixed question of fact and law, and when there is support in the record for that undisturbed finding the matter is beyond the scope of our review (see, People v Van Luven, 64 NY2d 625, 627; People v Harrison, 57 NY2d 470).
Defendant’s assertion (adopted by Appellate Division dissenters) that the only basis for the stop was that the men in the car were black in a white neighborhood presents an issue of sufficiency and thus raises a question of law (People v McRay, 51 NY2d 594, 601). But that argument overlooks the other evidence corroborating the radio report, including the presence of two men of apparently equal size in a car close to, and coming from the direction of, the factory where a robbery had occurred only minutes before, at 4:00 a.m., with little or no other traffic in the area. There was thus sufficient evidence to raise an issue of credibility, placing the undisturbed finding beyond our review.
The presence of reasonable suspicion to support the original stop and frisk, however, still leaves open the question whether an otherwise valid stop became invalid by virtue of the subsequent detention and transportation of defendant to the crime scene. At the outset we reject the People’s contention that the police action was supported by probable cause, which would justify even an arrest and end our inquiry. Probable cause requires information sufficient to support a reasonable belief that an offense has been or is being committed by the suspect (CPL 140.10; see, People v Bigelow, 66 NY2d 417, 423). While the suppression court found probable cause to arrest, significantly the Appellate Division did not agree; *239 indeed, two Justices believed that even reasonable suspicion was lacking. Nor can we hold that the facts known to the police at the time — including a nonspecific description of the perpetrators and some variation from the description of the automobile — gave rise to a reasonable belief as a matter of law that these suspects had committed the robbery. In the absence of probable cause, we must consider whether the actions of the police in detaining and transporting defendant to the crime scene violated his State and Federal constitutional rights to be free of unreasonable governmental intrusions.
 Resolution of this question must begin with characterizing the police action: was it an arrest (see, CPL 140.05, 140.10, 140.15) or a stop (see, CPL 140.50; People v Cantor, 36 NY2d 106, supra; Terry v Ohio, 392 US 1, supra)? Next, if not an arrest but a Terry-type stop, did the police action here exceed the allowable limits of such a stop? We determine that, on the facts before us, the detention and transportation were not an arrest, but a permissible incident of a lawful stop.[2]
An arrest and search of a suspect are unquestionably unlawful without probable cause (see, Dunaway v New York, 442 US 200; People v Battaglia, 82 AD2d 389, revd on dissent of Hancock, Jr., J., at App Div 56 NY2d 558). But not every seizure is an arrest. By the same token, the police testimony that defendant was arrested only after identification by the victims is not conclusive of the issue. Even without a technical formal arrest, a suspect’s detention may in fact be the equivalent of an arrest, requiring probable cause. As with many other questions in this troubling, sensitive area of police encounters with private citizens, the desire for a fixed list of factors that will guide persons in the field and courts sitting in review is frustrated by the speed and individuality with which such situations develop. No checklist has yet been assembled that would facilitate mechanical determination of when a given set of circumstances equals an arrest (see, Dix, Nonarrest Investigatory Detentions in Search and Seizure Law, 1985 Duke LJ 849, 921; Preiser, Confrontations Initiated by the Police on Less than Probable Cause, 45 Albany L Rev 57; and LaFave, Fourth Amendment in an Imperfect World: On Drawing fBright Lines” and "Good Faith”, 43 U Pitt L Rev *240 307). We have rejected as standards for determining when a de facto arrest has taken place the wholly subjective belief of the officer, as well as that of the citizen (see, People v Chestnut, 51 NY2d 14, 20; People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851), and looked instead to "what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position” (People v Yukl, 25 NY2d 585, 589, supra). Applying this test, it is clear that the police action fell short of the level of intrusion upon defendant’s liberty and privacy that constitutes an arrest. Indeed, even on a wholly subjective analysis, we would conclude that defendant could not reasonably have believed that he was under arrest.
Defendant was not handcuffed, there was no show of force, he was permitted to park the car nearby before accompanying the police, he was not taken to the police station, the total time and distance involved were very brief, he was told the specific, limited purpose of the detention, and no information was asked of him after the initial inquiry. In direct contrast are Dunaway v New York (supra), where defendant was taken from his home in a police car to the station, placed in an interrogation room, given Miranda warnings and questioned at length by officers; People v Battaglia (supra), where defendant was handcuffed and his pockets searched, and he was placed in a police vehicle without any explanation of the circumstances while the police determined whether a crime had occurred; and People v Henley (53 NY2d 403) where, having first been confronted by a drawn gun, defendant was handcuffed, placed in a patrol car, driven in the patrol car to the crime scene and then home, while the police looked for evidence (ultimately found in his apartment) that would justify his arrest. Significantly, in none of those cases was defendant informed of the nature of the detention and that he would be released unless arrested.[3]
The nonarrest detention including transportation of defendant to the crime scene was within the bounds of a lawful investigatory stop.
There can be no question that the stop recognized in Terry v Ohio (392 US 1, supra) and CPL 140.50 is a narrowly drawn exception to the requirement of probable cause (see, Dunaway v New York, 442 US 200, supra). However, as the Supreme Court itself has made clear, "the exception for limited intru *241 sions that may be justified by special law enforcement interests is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons involved in Terry and Adams.” (Michigan v Summers, 452 US 692, 700.) "If the purpose underlying a Terry stop — investigating possible criminal activity — is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in Terry and Adams. ” (Michigan v Summers, 452 US, at p 700, n 12, supra; see, Dunaway v New York, 442 US 200, 219 [White, J., concurring], supra; see also, United States v Sharpe, 470 US 675; and United States v Place, 462 US 696, 709.)
In the present case, a robbery had been reported. In the circumstances given, defendant’s response to the officer’s initial inquiry — that he was just returning from work at American Brass — was unsatisfactory to allay the officer’s already well-founded suspicion that defendant may have committed that robbery. Indeed, the officer knew that American Brass was nowhere in the area, so that the only effect of the response was to arouse his suspicions even further. At that point, defendant urges, the law required the police simply to set him free because there was still no probable cause to arrest him, and nothing between a momentary stop and an arrest is permissible. This is hardly a sensible result, and is certainly not compelled by law. Defendant’s own action gave the police reason for prolonging the stop and inquiring further; the critical question is what are the bounds of such a prolonged stop.
The Appellate Division concluded that detaining defendant and transporting him to the crime scene were in the circumstances not unreasonable, and were therefore lawful, relying principally on the following guideposts set forth in United States v Sharpe (470 US, at pp 682-686, supra): first, the action must be reasonably related in scope to the circumstances justifying the interference in the first place. Second, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. Third, in this examination it is appropriate to consider that the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. Finally, " '[a] court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court *242 should not indulge in unrealistic second-guessing.’ ” (116 AD2d, at p 155.)
Sharpe, of course, involved only the question whether a person suspected of criminal activity might be detained for a period of 20 minutes, and not the additional issue of movement of the suspect to the crime scene. Nonetheless, we agree with the Appellate Division that, applying a test of reasonableness, as more precisely articulated in Sharpe and its cited antecedents, the police action here did not violate defendant’s constitutional rights to be free of unreasonable searches and seizures: the police diligently pursued a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it was necessary to detain the defendant (see, 3 LaFave, Search and Seizure § 9.2, at 40).
Nor does the fact that the detention included transporting defendant to the crime scene render the seizure unreasonable. There were witnesses within a quarter mile of the place of inquiry — approximately one minute away by car — who had just seen the perpetrators and would either identify defendant (in which event he would be arrested) or not identify him (in which event he would be released). A speedy on-the-scene viewing thus was of value both to law enforcement authorities and to defendant, and was appropriate here (see, People v Love, 57 NY2d 1023; People v Adams, 53 NY2d 241, 249; People v Brnja, 50 NY2d 366, supra; People v Blake, 35 NY2d 331, 337; see also, People v Lippert, 89 Ill 2d 171, 184, 432 NE2d 605, and 3 LaFave, Search and Seizure § 9.2, at 40-45, and 1986 Pocket Part, at 26). The transportation did not unduly prolong the detention. Defendant might, alternatively, have been momentarily detained where he had been stopped and the witnesses brought there, but such a procedure would have entailed first securing defendant and his companion and then arranging transportation for the witnesses, possibly even a more time-consuming process than that chosen. At all events, given the time and distance involved this is a difference without constitutional significance. Thus, the detention, including movement of defendant, fit within a concept of reasonableness, and within the principles spelled out in Sharpe.
While agreeing with the Appellate Division’s conclusion here, we recognize that movement of a suspect even a short distance presents a greater intrusion than that involved in Sharpe; further, given this difference, it would be desirable to *243 define outer boundaries to guide law enforcement authorities and reviewing courts in such situations. A fixed yardstick by which to measure the reasonableness of such detentions may be impossible, but by the same token a test of what was unreasonable in the circumstances, applying common sense, seems to us to be unduly elastic, furnish little guidance, and provide inadequate protection of individual rights. Moreover, such analysis, in its emphasis on law enforcement objectives, does not accord sufficient weight to the fact that the Terry exception is limited and should not swallow up the probable cause requirement of the State and Federal Constitutions (see, United States v Sharpe, 470 US, at pp 688-689 [Marshall, J., concurring], supra). A conclusion that irrespective of time and distances involved, and irrespective of the basis for the stop or the prolonged inquiry, a detention (involving transportation to the crime scene) would be lawful if it enabled law enforcement officers expeditiously to resolve reasonable suspicion, would not satisfy State constitutional standards even if it conceivably did meet Federal constitutional standards. It should therefore be made clear that, in the case before us, we uphold the scope of the police action not only because its purpose was to confirm or dispel reasonable suspicion quickly, but also because of the presence of the following particular factors: the authorities knew that a crime had actually been committed; the total period of detention was less than 10 minutes,[4] the crime scene to which defendant was taken was very close, and eyewitnesses were there; and there is no proof of significantly less intrusive means available to accomplish the same purpose.
Finally, we note that the Appellate Division has added a gloss of "totality of the circumstances” and "the whole picture” to the test for determining both reasonable suspicion (see, e.g., 116 AD2d, at p 154) and the reasonableness of a detention (see, e.g., 116 AD2d, at pp 157, 159). Both those determinations are of constitutional dimension; they must rest on articulable facts, credible objective evidence, and the rational inferences that flow therefrom (see, e.g., People v De Bour, 40 NY2d 210, 223, supra; People v Cantor, 36 NY2d 106, 113, supra). In another context we have, on State constitutional grounds, rejected the ubiquitous "totality of the circum *244 stances” test as inadequately serving the aims of predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens (see, People v Johnson, 66 NY2d 398, 407). For those same reasons, we reject this ingredient as part of the present formulations. The findings of reasonable suspicion and reasonable detention rested on sufficient foundation without this gloss.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur.
Order affirmed.

. If this police action is determined to be illegal, defendant seeks suppression of the resultant evidence under State (see, People v Johnson, 66 NY2d 398, 408, n 3) and Federal exclusionary rules.

. This analysis is made as a matter of State law, including State constitutional law. We further conclude that defendant’s Federal constitutional rights — a minimum guarantee — are preserved.

. See, ALI Model Code of Pre-Arraignment Procedure § 110.2 (5) (a) (ii), imposing such a requirement for questioning suspects during stops.

. We have no need in this case to consider whether a maximum time limitation should be fixed. (See, United States v Sharpe, 470 US 675 [rejecting a per se limitation of 20 minutes], and ALI Model Code of Pre-Arraignment Procedure § 110.2 [5] [a] [ii] [recommending a ceiling of 20 minutes].)