■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERTO SOTO, Also Known as F. GARCIA, Also Known as J. FRANCISCO GARCIA, Appellant. [599 NYS2d 538] —Judgment, Supreme Court, Bronx County (Frank Diaz, J., at suppression hearing; Gerald Sheindlin, J., at trial and sentence), rendered December 12, 1991, convicting the defendant, upon a jury verdict, of criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the fourth degree and criminal possession of a controlled substance in the seventh degree and sentencing him, as a persistent violent felony offender, to concurrent indeterminate terms of imprisonment of from 10 years to life on the possession of a weapon count, 5 to 10 years on the fourth degree possession of a controlled substance count and to a conditional discharge on the remaining count, unanimously reversed, on the law and the facts, the judgment is vacated, the defendant's motion to

suppress physical evidence and his statement to the police is granted, and the matter is remitted to the Supreme Court for further proceedings.

At the hearing granted in response to the defendant's motion to suppress physical evidence and a statement made to the police, Sergeant Timothy Maddock testified that at approximately 10:15 P.M. on August 13, 1990, he and his partner, Police Officer George Lippi, were on routine patrol in their unmarked patrol car when they observed a group of men on the corner of Sheridan and McClellan Avenues, an area known for drug transactions. The defendant, who was standing with the group, turned and looked in the direction of the officers, who were in plainclothes. The officers testified that the defendant looked nervous upon seeing them and started to walk away. Maddock decided to get out of his car and follow the defendant to "see if he was going to do anything" even though he had "absolutely" no reason to believe that the defendant had committed a crime or was armed. The defendant turned and looked at Maddock a few times as he continued walking at a normal pace.

Lippi followed in the patrol car and drove with the lights off. He lost sight of his partner and the defendant when he drove behind a dumpster, but when they came back into view, Lippi noticed that the defendant was wearing a pouch around his waist that appeared weighted down. Lippi then saw the defendant move his hands from his pocket to the pouch and bend over. Believing that the defendant might be retrieving a weapon, Lippi jumped out of his car, pointed his gun at the defendant, grabbed him and ordered him up against a wall. The defendant complied. Lippi told Maddock that the defendant was wearing a pouch, which Maddock had not seen. Maddock felt it, and, believing it contained a gun, unzippered it and removed a loaded .38 caliber handgun. The pouch also contained narcotics.

The defendant was handcuffed and brought to the patrol car. When Maddock told Lippi to check the defendant for other weapons, the defendant said "[t]hat is the only gun I have."

The Supreme Court denied the defendant's motion to suppress the physical evidence, concluding that Lippi's confrontation with the defendant constituted reasonable "protective action." The court also denied the motion to suppress the defendant's statement on the ground that it was made spontaneously and not in response to any custodial interrogation.

The record fails to support the Supreme Court's determination that the officers' actions were justified. By pointing his gun at the defendant, grabbing him and ordering him up against the wall, and by immediately frisking and then searching the defendant's pouch without conducting any inquiry, Lippi's actions amounted to an arrest of the defendant *(People v Diaz,* 81 NY2d 106; *People v Hicks,* 68 NY2d 234; *People v Cantor,* 36 NY2d 106; *People v Wilson,* 175 AD2d 15, *lv denied* 78 NY2d 1015; *People v Machuca,* 156 AD2d 993). A "reasonable man *[sic],* innocent of any crime", would have thought he had been arrested had he been in the defendant's position *(People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851; *see also, People v Diaz, supra; People v Hicks, supra).*

Such forcible seizure was justified only if supported by probable cause *(Dunaway v New York,* 442 US 200; *People v Martinez,* 80 NY2d 444; *People v Hicks, supra; People v Cantor, supra).* The circumstances observed by the officers here did not provide them with probable cause.

The defendant's behavior, in purportedly appearing nervous at the sight of the officers, who were in plainclothes, and in walking away from the crowd, was innocuous, and, at best, gave the officers the right to keep the defendant under observation or to approach and request information *(People v May,* 81 NY2d 725; *People v Hollman,* 79 NY2d 181; *People v De Bour,* 40 NY2d 210; *People v Madera,* 189 AD2d 462, *lv granted* 81 NY2d 1022; *People v Holmes,* 181 AD2d 27, *lv granted* 80 NY2d 930). The defendant's actions, however, did not provide a basis for any greater level of intrusion *(People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023; *People v Howard,* 147 AD2d 177, *appeal dismissed* 74 NY2d 943). There is no indication from the record that the defendant knew the man following him was a police officer; Maddock did not identify himself. While this neighborhood was known for drug activity, this factor alone was insufficient to justify the excessive police behavior *(People v Bronston,* 68 NY2d 880; *People v Wilson, supra; People v Howard,* 147 AD2d 177, *supra).* The officers had not received a report of a crime having been committed in the area and conceded that they observed no actions of the defendant evidencing criminality. However, they decided to follow him anyway to see if he would "do something." Since they did not attempt to question him, his action in walking away cannot be considered "flight" or an attempt to evade the officers.

The officers' subsequent observation of the defendant's pouch and the movement of his hands toward it could not

serve to escalate their hunch that the defendant was going to engage in wrongdoing to the level of probable cause or even to the lower level of reasonable suspicion, which would serve as a predicate for a stop and frisk *(see, Terry v Ohio,* 392 US 1; *People v Martinez, supra; People v De Bour, supra).* The type of waistline pouch the defendant was wearing is commonly used to carry all sorts of personal items, not necessarily contraband. The Assistant District Attorney who tried this matter informed the hearing court that he wears one. Although the pouch appeared to be weighted down, the officers were unaware of its contents. There was nothing in either the wearing of the pouch or in the defendant's behavior indicative of the presence of a weapon *(People v Prochilo,* 41 NY2d 759). Since "[t]he police simply do not have *carte blanche* to search or 'touch the pocket' of every individual on the street who walks in a 'little out of the ordinary' manner, looks over his shoulder * * * or appears to have a bulky object in his pocket" *(People v Cornelius,* 113 AD2d 666, 668), they surely do not have the right to make a gunpoint seizure of an individual engaging in innocuous behavior wearing an item commonly worn in accordance with today's fashion.

It was, therefore, error to deny the defendant's motion to suppress physical evidence. Since his statement to the officers was the fruit of the illegal search and seizure, it was also error to deny his motion to suppress this statement *(Wong Sun v United States,* 371 US 471). Concur—Milonas, J. P., Rosenberger, and Ellerin, JJ.

Kupferman, J., concurs in a separate memorandum as follows: I concur on constraint inasmuch as I cannot fault the analysis by our Court of the applicable cases.

Nonetheless, this was good police work. There was a rational basis for the stop. The police did not have to wait for the "glint of steel" *(People v Benjamin,* 51 NY2d 267, 271). Their experienced analysis led them to conclude, after following the defendant, whom they concededly had the right to keep under observation *(People v May,* 81 NY2d 725, 728), that there might be a weapon in his pouch.

In these parlous times, cases which were developed based on a "kinder, gentler" environment have no real relevance.