■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LUKE ARTHUR, Respondent. [617 NYS2d 759] —Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered October 14, 1993, which suppressed physical evidence, show-up identification and a post-arrest statement to the police as based on an unlawful detention without reasonable suspicion that a crime had been committed, unanimously reversed, on the law, suppression is denied, and the case is remanded for further proceedings in accordance with law.

Two female Transit Police officers were on plainclothes duty in the subway station at 34th Street and 8th Avenue in Manhattan, looking out for fare beaters, when they observed a man wearing a Federal Express uniform chasing defendant into the station and capturing him near the token booth. They approached cautiously, reluctant to blow their cover on this beat, and then identified themselves, inquiring what was happening. The uniformed individual (Figueroa) reported that defendant had just robbed somebody on the street, and that he had taken over the chase on behalf of a female complainant who was waiting upstairs. The officers kept defendant with them while Figueroa went to fetch the complainant. At some point defendant was placed in handcuffs because, according to one of the officers, he gave indication that he was "ready to run". Figueroa returned a few minutes later with a woman who told one of the officers that her husband had just been robbed by a tall black male in a brown jacket. Asked if she saw this individual anywhere in the subway station, the woman looked around and spotted defendant, positively identifying him. She thereafter indicated that this perpetrator had been accompanied by two other individuals. She told the officer that she had pursued for about half a block when a Federal Express truck driver happened along and took up the chase. Figueroa confirmed that he assumed a robbery had just taken place because defendant was fleeing from the woman.

Following the identification, defendant was arrested without force. At the police station, his brown jacket was seized, but no money was found. After waiver of *Miranda* rights, defendant admitted to a detective that he had accompanied two males to the area after one of them expressed an intention to "hit a pocket". When one of the companions lifted an elderly man's wallet, they all ran away, and defendant was caught in the subway station by a pursuing truck driver.

Defendant has been charged with grand larceny in the fourth degree, a felony. The hearing court granted suppression

of the show-up identification, the jacket and the statement, on the ground that defendant's forcible detention prior to his arrest was unwarranted in this case. We disagree.

Police may forcibly detain someone if they have information which, while not amounting to probable cause to justify an arrest, provides them nonetheless with reasonable suspicion that a crime has been committed *(People v Martinez,* 80 NY2d 444). The hearing court conceded that police have a right to act upon information provided to them by private citizens who report crimes they have witnessed or which have been perpetrated against them. Suppression was granted, however, on the ground that the private citizen (Figueroa) who first reported the incident to the plainclothes Transit officers was neither a witness to nor a victim of a crime, but had merely joined and taken over pursuit on behalf of a stranger who he *assumed* had just been victimized.

In *People v Liner* (133 AD2d 555, *appeal dismissed* 70 NY2d 945) and *People v Polanco* (174 AD2d 468), police spotted the defendant being chased down the street. In both cases they joined and eventually took over the pursuit, capturing the defendant, detaining him, and transporting him to a nearby show-up for identification by the pursuers. In each case it is clear that the police did not learn until later that the individuals in pursuit were the complainant *(Liner)* and neighbors who were witnesses *(Polanco)* to a crime. And in each case, without any other indication that a crime had been committed, the limited detention of the pursued individual for purpose of a show-up identification was upheld. The police acted in those cases on no better information than did citizen Figueroa in the case now before us.

Even the use of handcuffs as a limited assist in detaining a suspected perpetrator may be justified under such circumstances *(see, People v Allen,* 73 NY2d 378), as the hearing court conceded, where the detainee gives objective indication of an intention to flee. In *Liner (supra)* and *Polanco (supra),* there was no indication of any need for such physical restraint, since each defendant was "transported" to the scene of his show-up, no doubt in the back seat of the police car. By contrast, in light of the Transit officers' impression that defendant at bar might try to flee into the crowded noontime subway rush, prudence dictated this least intrusive available means of restraint *(see, People v Hicks,* 68 NY2d 234, 243).

We reject the hearing court's conclusion that the probative value of Figueroa's information was "minimal" and, in effect,

should have been ignored. Suppression should have been denied. Concur—Wallach, J. P., Kupferman, Ross, Nardelli and Williams, JJ.