*908 OPINION OF THE COURT
David Friedman, J.
The issue presented by defendant’s suppression motion concerns the effect of People v Johnson (81 NY2d 828) upon People v Duuvon (77 NY2d 541). While Johnson may narrow the range of permissible police conduct vis-á-vis showups, I conclude that the showup that occurred here was not proscribed.
At a suppression hearing Police Officers Dwayne Chandler and Daniel Jackson testified credibly. Their testimony shows that on November 11, 1994, at approximately 6:29 p.m., Police Officers Chandler, Scanlon and Policheck received a radio run of an assault at Pacific Street and Nostrand Avenue. Upon arriving at that location they noticed a crowd of people in front of 608 Nostrand Avenue. Approaching the crowd they observed a male, who they later learned to be Jason, holding defendant against the wall.
As the officers separated the two men Jason stated that defendant had earlier robbed his mother. Because defendant was very agitated and screaming "I’m going to kill you” at Jason, Chandler physically restrained defendant against the wall while another officer assisted by placing handcuffs on defendant.
After defendant was handcuffed, Chandler was advised by Jason that his mother, Janet Hinsdale, lived five car lengths away at 616 Nostrand Avenue. Chandler then went to 616 Nostrand Avenue where he observed an elderly woman. She identified herself as Janet Hinsdale.
Hinsdale accompanied Chandler to the location where defendant was being held to see if she could identify defendant as the man who had robbed her. While walking there Hinsdale stated that she had been robbed at about 2:00 p.m. that day, just four and one-half hours earlier, by a middle-aged black male using a knife. Upon arriving at the scene Chandler asked Hinsdale if defendant was the man who robbed her and she responded affirmatively. Defendant was then arrested.
Defendant, among other things, seeks to suppress the showup. He contends that a showup done more than four hours after the incident was improper and that where so much time elapsed proper police procedure mandated that an identification should be made only via a lineup. Thus, an issue arises as to whether a showup conducted four and one-half *909 hours after commission of a crime is, ipso facto, an impermissible identification procedure.
People v Duuvon (77 NY2d 541, supra), pointing to cases such as People v Hicks (68 NY2d 234) and People v Brnja (50 NY2d 366), sets forth the principle that there is no presumptive impermissibility in a showup of an accused which is close in time and place to the occurrence of a crime. Duuvon in enunciating its holding makes no differentiation for showups close in time and place to the occurrence of an arrest and those close in time and place to the commission of a crime. Thus Duuvon would appear to permit the showup conducted by Chandler.
The difficulty is that in People v Johnson (81 NY2d, at 831, supra) the Court seemed to narrow the boundaries of the permissible stating, "While the limits of an appropriate time period between the alleged crime and a showup identification may vary from case to case, the emphasis must be upon the prompt and immediate nature of an identification after the crime has been committed, not * * * after the defendant has been arrested * * * [A] showup [two and one-half] hours after the crime, with both the complainant and the defendant transported to the crime scene, was improper.”
It would follow that a showup conducted four and one-half hours after the commission of the crime, as took place in the instant situation, would run afoul of Johnson (supra) notwithstanding its closeness in time and place to the arrest. In my view comparative analysis of Duuvon (supra) with Johnson shows otherwise.
In Duuvon (supra) defendant robbed a dry cleaners twice. Both times the manager and an employee were present. As defendant fled after the second robbery the manager gave chase. The defendant was captured by the police around the corner from the cleaning store. The manager arrived there and identified defendant as the robber. Defendant was arrested, handcuffed and seated in the back of a patrol car. The police backed around to the cleaning store where the employee identified defendant. It was this showup identification by the employee that was challenged by defendant.
In finding the showup permissible the Court pointed to the fact that defendant had been returned to the robbery scene from the arrest scene which was only around the corner and that the return was only two minutes after the arrest and three to four minutes after the commission of the crime. The *910 Court acknowledged that the fact that "the manager of the cleaning establishment had identified defendant at the scene of his arrest just before the employee showup * * * adds another feature of concern and [need for] heightened scrutiny” (People v Duuvon, supra, at 545).
The Court in Duuvon (supra), however, refused to be persuaded by this factor, inter alia, because a fast-moving uninterrupted array of activity at a street crime scene cannot be compartmentalized. Thus the street scene was not frozen at the point of identification by the manager so as to invalidate the subsequent postarrest identification by the employee. The temporal and spatial closeness of events to the commission of the crime was a determinative consideration which warranted permitting the showup.
Turning to the Johnson showup identification, it is clear that an arrest had already been made before it occurred. While it is true that in Duuvon (supra) an arrest had also already been made the circumstances surrounding the Johnson arrest and identification are significant for their contrast. The Johnson arrest was based upon a description furnished by the complainant after which the police transported the defendant to the complainant for a showup identification. At that point there was no legitimate need for a showup. Unlike Duuvon there was no fast-paced evolving crime scene present. The police in Johnson (supra) having an opportunity to reflect and having determined that there was probable cause for an arrest should have proceeded to conduct a lineup. In fact, examination of the record on appeal in Johnson reveals that the defendant argued this very point, namely, that there was no exigency necessitating a showup because there already was probable cause for an arrest.
Thus, ultimately Johnson (supra) does not contradict Duuvon (supra) but merely recognizes that the promptness of a showup after an arrest by itself does not make the showup permissible where the crime was committed hours earlier. Other factors creating exigency must be present, such as the unbroken chain of events found vital in Duuvon — that is crime, escape, pursuit, apprehension and identification. Considered otherwise Johnson contains none of the exigency with which Duuvon is engulfed.
Turning to an examination of the showup performed with Kinsdale shows that there was much exigency. A suspect was being detained by Jason with a crowd gathering. The police *911 continued this detention as they arrived because of Jason’s accusations but they lacked probable cause to make an arrest (cf. People v Parris, 83 NY2d 342; People v Rivera, 210 AD2d 991). Not knowing whether they were detaining the right person, the choice faced by the police was to allow the suspect to go free or to investigate the information furnished by Jason in regard to his mother who was in the immediate vicinity. Significantly, the need to determine whether the right person has been detained is no less critical whether the crime has just taken place or whether the crime took place several hours or even days before (cf., People v Hicks, 68 NY2d, supra, at 241).
Thus legitimate and pressing law enforcement goals and the overriding societal interest in seeing apprehension of the right person mandated that Kinsdale be brought to the scene to see if the suspect could be identified (People v Maybell, 198 AD2d 108, lv denied 82 NY2d 927). In balancing these considerations for this fast-paced street encounter the inescapable conclusion is that Johnson (supra) tolerates the showup.
Accordingly, the motion to suppress is denied.