■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JASON P. DIBBLE, Appellant. [845 NYS2d 203]—

Appeal from a judgment of the Monroe County Court (John J. Connell, J.), rendered July 16, 2004. The judgment convicted defendant, upon his plea of guilty, of burglary in the second degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of burglary in the second degree (Penal Law § 140.25 [2]). County Court properly refused to suppress tangible evidence and defendant's statements to police officers as the fruit of an unlawful search and seizure. At its inception, the encounter between defendant and the arresting officers was a permissible exercise of the common-law right of inquiry (*see generally People v De Bour*, 40 NY2d 210, 223 [1976]). Based on the recent 911 call reporting that someone was inside the church, burglarizing it, and based on their observation of defendant emerging from the shrubbery just outside the church and "walking briskly" away from the church, the officers had at least a founded suspicion of criminal activity on the part of defendant (*see generally People v Battaglia*, 86 NY2d 755, 756

[1995]; *De Bour,* 40 NY2d at 223). The officers thus were "entitled to interfere with [defendant] to the extent necessary to gain explanatory information, but short of a forcible seizure" (*De Bour,* 40 NY2d at 223; *see People v Ralston,* 303 AD2d 1014 [2003], *lv denied* 100 NY2d 565 [2003]), particularly by engaging him in "extended and accusatory" questioning focusing on his "possible criminality" (*People v Hollman,* 79 NY2d 181, 191 [1992]), and by asking defendant for permission to search his person (*see generally Battaglia,* 86 NY2d at 756; *Hollman,* 79 NY2d at 191-192).

While questioning defendant, the officers observed fresh mud stains on his elbows and knees, as well as blades of grass or pine needles dangling from his lower lip or chin. They also observed multicolored knit gloves protruding from each side pocket of defendant's jacket. Those officers further learned from their fellow officers that the church had in fact been burglarized, as indicated by pry marks and a broken handle on an exterior door, a broken window on an interior door, and burglar's tools found inside the building. The officers thereby acquired a reasonable suspicion that criminal activity was at hand (*see People v Martinez,* 80 NY2d 444, 448 [1992]; *People v Hicks,* 68 NY2d 234, 237-238 [1986]; *People v Cantor,* 36 NY2d 106, 112-113 [1975]). One of the officers then "request[ed]" or "asked" defendant to empty his pockets, i.e., the officer "asked" "if he had any problem with it or if he would give consent to [the officers'] looking through his pockets." In response, defendant emptied his pockets of, inter alia, the multicolored gloves. Because the consensual search was properly undertaken by the officers based on at least a founded suspicion that criminal activity was afoot (*see Hollman,* 79 NY2d at 191-192; *cf. People v Dunbar,* 5 NY3d 834 [2005]), there is no basis for suppression of the gloves.

At that point, the officers properly detained defendant for further investigation and transported him in their patrol car a short distance back to the scene of the burglary, where the officers continued their investigation (*see Hicks,* 68 NY2d at 242-243). Such an investigatory detention and transport of a suspect may be undertaken as an "incident" to a lawful forcible stop and detention and on the basis of reasonable suspicion of criminality (*id.* at 239), provided that, as here, the authorities know that a crime has actually been committed, the total period of detention is brief, the crime scene to which the suspect is taken is close by, "the police diligently pursue[ ] a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly, during which time it [is] necessary to detain

the defendant" (*id.* at 242; *see People v Owens*, 39 AD3d 1260, 1261 [2007], *lv denied* 9 NY3d 849 [2007]; *People v Wiley*, 32 AD3d 1352, 1353-1354 [2006], *lv denied* 7 NY3d 930 [2006]), and "there is no proof of significantly less intrusive means available to accomplish the same purpose" (*Hicks*, 68 NY2d at 243). Within minutes, the officers discovered a flashlight at the location where defendant had emerged from the bushes, and they further discovered maroon, black, and off-green fibers on the broken window inside the church, and the colors of those fibers appeared to match the colors of the fibers in defendant's gloves. Upon discovering such physical evidence, the officers had probable cause to arrest defendant for the burglary (*see People v Scott-Heron*, 11 AD3d 364 [2004], *lv denied* 4 NY3d 803 [2005]; *People v Raily*, 309 AD2d 604 [2003], *lv denied* 1 NY3d 578 [2003]; *People v Sanchez*, 278 AD2d 889, 890 [2000], *lv denied* 96 NY2d 763 [2001]; *see also People v Bridgefourth*, 13 AD3d 1165, 1166 [2004], *lv denied* 4 NY3d 828, 5 NY3d 760 [2005]) and to search his person incident to that arrest (*see People v Paul*, 6 AD3d 1129, 1130 [2004], *lv denied* 3 NY3d 679 [2004]; *Ralston*, 303 AD2d at 1014-1015; *People v Bland*, 302 AD2d 926 [2003], *lv denied* 99 NY2d 652 [2003]; *see also People v Reddick*, 265 AD2d 855 [1999], *appeal dismissed* 95 NY2d 822 [2000]; *see generally New York v Belton*, 453 US 454, 459 [1981], *reh denied* 453 US 950 [1981]; *United States v Robinson*, 414 US 218, 235 [1973]). Thus, there is no basis for suppression of the additional items seized from defendant's person at that point, or for suppression of defendant's subsequent spontaneous statement to the police. Present—Scudder, P.J., Hurlbutt, Gorski, Centra and Green, JJ.