[904 NE2d 808, 876 NYS2d 672]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKEY J. RYAN, Appellant.

Argued January 15, 2009; decided February 12, 2009

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender,* Rochester (*Janet C. Somes* of counsel), for appellant. After the sole eyewitness to the crime failed to select Mr. Ryan from a photo array, and selected someone else instead, the police lacked the requisite level of information necessary to detain Mr. Ryan while they showed a second witness the photo array. (*People v Hunt,* 155 AD2d 957; *People v Battaglia,* 82 AD2d 389, 56 NY2d 558; *People v Hicks,* 68 NY2d 234; *People v Yukl,* 25 NY2d 585; *People v De Bour,* 40 NY2d 210; *People v Hollman,* 79 NY2d 181; *Wong Sun v United States,* 371 US 471; *Dunaway v New York,* 442 US 200; *United States v Sharpe,* 470 US 675; *People v Johnson,* 64 NY2d 617.)

*Michael C. Green, District Attorney,* Rochester (*Wendy Evans Lehmann* and *Jessica Birkahn Housel* of counsel), for respondent. The police possessed the requisite reasonable suspicion to briefly detain defendant. (*People v Allen,* 9 NY3d 1013; *People v Pines,* 99 NY2d 525; *People v Roque,* 99 NY2d 50; *People v Reyes,* 90 NY2d 916; *People v Bianchi,* 85 NY2d 1022; *People v Foster,* 85 NY2d 1012; *People v Martinez,* 80 NY2d 444; *People v Jones,* 69 NY2d 853; *People v Hicks,* 68 NY2d 234; *People v Van Luven,* 64 NY2d 625.)

## OPINION OF THE COURT

CIPARICK, J.

The question presented by this appeal is whether the investigatory detention that occurred here exceeded the scope of that permitted under *People v Hicks* (68 NY2d 234 [1986]). We conclude that it did.

Acting upon descriptions provided by the victim of an early morning carjacking and another person, who was at the scene shortly before the crime occurred, as well as many prior encounters with defendant, a police officer approached defendant and asked him to have a seat in a marked police car. At the time of this request, five hours had elapsed since the carjacking. Defendant agreed to be seated. He was then locked in the police car and told that the purpose of his detention would be explained when a second officer, who was primarily responsible for the carjacking investigation, arrived.

When the second officer arrived, defendant was removed from the car, placed in another locked police vehicle and photographed. The photographs depicted defendant with his hands behind his back, as if handcuffed, which the Appellate Division found that he was. Once confined in the second car, defendant was informed that he was being held as a possible suspect in the earlier carjacking. Defendant was also told that, while he was being detained, an officer was speaking to "a witness" at another location, who had become available to view a photo array. This particular array had been prepared about one hour after the carjacking and was viewed by the victim, who failed to identify defendant and, instead, indicated that another individual most closely resembled the perpetrator.

During the time that defendant was held—approximately 13 minutes—the prospect of his release was never mentioned. Following the non-victim witness's positive identification of defendant from the photographic array, defendant was arrested and transported to the Public Safety Building. There, he was placed in a locked room to await questioning. He waived his *Miranda* rights, confessed to the carjacking, provided details as to the stolen car's location, and—around two hours after his initial detention commenced—signed a written statement memorializing his confession.

The People do not contend that the police had probable cause to arrest defendant prior to the positive photo array identification. And although defendant urges us to conclude that the police did not even have reasonable suspicion to detain him until that time, we need not resolve that issue here. For even assuming that reasonable suspicion was established when it began, this 13-minute detention was not justified under *Hicks*.

We have recognized that "limited intrusions" extending beyond the scope of traditional stop and frisks "may be justified by special law enforcement interests" even in the absence of probable cause (*see Hicks*, 68 NY2d at 240-241, quoting *Michigan v Summers*, 452 US 692, 700 [1981] [internal quotation marks omitted]). Thus, *Hicks* allowed a brief investigatory detention so that victims of a recent robbery could participate in a showup (*see id.* at 237). There, the efficacy of the prompt showup procedure depended on the defendant's and witnesses' simultaneous presence (*see id.* at 242). But no similar special law enforcement need justifying defendant's detention was shown here.

Proper administration of the photo array did not require defendant's presence and, in fact, the police officer did not even know that the non-victim witness had become available to view the photo array when defendant's detention began. Nor were there any other exigencies that might have permitted holding defendant while the photo array was conducted (*cf. People v Allen*, 73 NY2d 378, 379-380 [1989]; *People v Behrmann*, 264 AD2d 682, 682 [1st Dept 1999]). Thus, the only permissible inference that can be drawn is that this detention was undertaken simply to make it convenient for the police to arrest defendant if a positive identification subsequently occurred (*see People v Robinson*, 282 AD2d 75, 81 [1st Dept 2001] ["What the police did here, as a practical matter, was to place defendant under arrest in order to obtain sufficient evidence to arrest him"]). Accordingly, we conclude that, on the facts present here, defendant's detention exceeded the scope permitted under *Hicks* and that the photographs obtained during that detention must be suppressed.*

Although defendant's detention was illegal under *Hicks*, the People's argument that defendant's confessions were sufficiently attenuated so as to remove any possible taint arising from the detention and render the statements—and any tangible evidence derived therefrom—admissible was not addressed by the courts below. The question of attenuation being a mixed one of law and fact (*see People v Conyers*, 68 NY2d 982, 984 [1986]; *People v Borges*, 69 NY2d 1031, 1033 [1987]), the case should be remitted to Supreme Court so that the People's claim of attenuation can be properly determined. Should Supreme Court find that, after applying the relevant attenuation factors (*see People v Johnson*, 66 NY2d 398, 407 [1985]; *cf. Borges*, 69 NY2d at 1033), defendant's confessions were acquired by means sufficiently independent of his initial detention, its judgment should be amended to reflect that determination. But if Supreme Court finds to the contrary, it should grant defendant's motion to suppress the evidence, defendant's guilty plea should be vacated and further proceedings should be had as the circumstances may warrant.

---

* To the extent that the People now assert that the detention here was authorized on the basis of defendant's initial "consent" to be seated in the back of the marked police car, we decline to consider this theory as it was never raised in the suppression court (*see People v Johnson*, 64 NY2d 617, 619 n 2 [1984]). Neither have the People met their "heavy burden" of proving the voluntariness of defendant's purported consent to be photographed while handcuffed (*see People v Gonzalez*, 39 NY2d 122, 128 [1976]).

Accordingly, the order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion, and as so modified, affirmed.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order modified, etc.