■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARCELLE E. WILLIAMS, Appellant. (Appeal No. 2.) [914 NYS2d 521]—

1654

Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered September 26, 2006. The judgment convicted defendant, upon a jury verdict, of burglary in the second degree.

It is hereby ordered that the judgment so appealed from is reversed on the law, that part of the motion seeking to suppress physical evidence is granted and a new trial is granted.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1]) and, in appeal No. 2, he appeals from a prior judgment convicting him upon a jury verdict of burglary in the second degree (§ 140.25 [2]). Addressing first the judgment in appeal No. 2, we agree with defendant that money seized from his pocket by a police officer should have been suppressed as the fruit of an unlawful arrest. The record of the suppression hearing establishes that the police were justified in stopping defendant's vehicle for a speeding violation, and in thereafter asking defendant to produce his license and registration and to exit the vehicle (*see generally People v Banks*, 85 NY2d 558, 562 [1995], *cert denied* 516 US 868 [1995]; *People v Johnson*, 102 AD2d 616, 625 [1984], *lv denied* 63 NY2d 776 [1984]). The officers who conducted the traffic stop, however, "went beyond merely ordering defendant from his car. [They] took the additional 'protective measures' of frisking defendant, handcuffing him and placing him in a police car . . . [S]uch an intrusion amounts to an arrest[,] which must be supported by probable cause" (*Johnson*, 102 AD2d at 626; *see People v Brnja*, 50 NY2d 366, 372 [1980]). At the time of the stop and arrest of defendant, "[n]o probable cause yet existed to arrest him on burglary charges for[,] although the police had reports of possibly suspicious behavior, they had no knowledge [that] a burglary had even been committed" (*People v Randall*, 85 AD2d 754, 754-755 [1981]; *cf. People v Hicks*, 68 NY2d 234, 241 [1986]). The officers were not at liberty to detain defendant while other officers attempted to determine whether a burglary had in fact been committed, i.e., "until evidence establishing probable cause could be found" (*People v Battaglia*, 82 AD2d 389, 396 [1981, Hancock, J., dissenting], *revd on dissent of Hancock, J.* 56 NY2d 558 [1982]; *see*

*People v Nicodemus*, 247 AD2d 833, 836 [1998], *lv denied* 92 NY2d 858 [1998]).

Because the arrest of defendant was illegal, the money seized from his pocket must be suppressed as flowing directly from the illegal arrest. Further, "[i]t cannot be said that the money found on defendant . . . [was] the product of a source independent of the defendant's detention or that the illegal activity was attenuated by a significant intervening event which justified the conclusion that [such] evidence was not the product of the illegal activity" (*Battaglia*, 82 AD2d at 397 [Hancock, J., dissenting] [internal quotation marks omitted]). Nor can it be said that the error in refusing to suppress the evidence did not contribute to the conviction and thus that it is harmless beyond a reasonable doubt (*see People v Evans*, 43 NY2d 160, 167 [1977]; *see generally People v Crimmins*, 36 NY2d 230, 237 [1975]). The money, which was the only evidence directly linking defendant to the burglary, was divided into four packets in defendant's pocket, and corresponded exactly in amounts and denominations to money taken from four separate locations in the burglarized home. We thus conclude that there is a reasonable possibility that the admission of the tainted evidence influenced the verdict (*see Crimmins*, 36 NY2d at 237; *People v Terrell*, 185 AD2d 906, 908 [1992]).

With respect to appeal No. 1, we further agree with defendant that the plea was induced by the promise that the sentence would run concurrently with the sentence imposed upon the prior conviction in appeal No. 2. Because we are reversing that prior judgment of conviction, the judgment in appeal No. 1 must be reversed, the plea vacated and the matter remitted to Supreme Court for further proceedings on the indictment (*see People v Fuggazzatto*, 62 NY2d 862 [1984]).

All concur except Scudder, P.J., and Martoche, J., who dissent and vote to affirm in separate memoranda:

Scudder, P.J. (dissenting). I respectfully dissent in both appeals. In my view, the money seized from defendant is not the product of an unlawful arrest and thus I would affirm the judgment in appeal No. 2. In that event, I would also affirm the judgment in appeal No. 1 inasmuch as there is no issue pursuant to *People v Fuggazzatto* (62 NY2d 862 [1984]).

With respect to appeal No. 2, under the facts established at the suppression hearing, it is clear that the police had the authority to forcibly detain defendant for a brief period for investigative purposes because they had reasonable suspicion that defendant had been involved in a burglary (*see People v Hicks*, 68 NY2d 234, 238 [1986]; *People v Mabeus*, 68 AD3d

1557, 1562 [2009], *lv denied* 14 NY3d 842 [2010]; *People v Medina*, 37 AD3d 240, 242 [2007], *lv denied* 9 NY3d 847 [2007]; *cf. People v Ryan*, 12 NY3d 28, 30-31 [2009]). Furthermore, at the time of the search, the police had probable cause to arrest defendant.

Defendant had been suspected of a number of residential burglaries occurring during the night, and the police had therefore obtained a warrant to install a GPS system on defendant's vehicle in order to track defendant's movements. At approximately 3:00 A.M. on the date of the burglary at issue, defendant's vehicle was detected leaving defendant's residence in the City of Rochester and traveling eastbound on I-490, where it exited at Bushnell's Basin. Defendant drove the vehicle more than once around the area of a particular neighborhood, which had only one road for ingress and egress, and he then parked the vehicle for approximately 30 minutes. At 4:10 A.M. the vehicle left the neighborhood and entered the westbound lane of I-490. Police officers were notified by radio that defendant was driving westbound on I-490, and defendant was stopped by the police for speeding at 4:17 A.M. The officer who stopped defendant's vehicle was joined by another officer, who was aware of the foregoing information and of the fact that, within one minute after defendant had left the neighborhood, other officers had discovered the contents of a purse strewn in the street in proximity to the location where defendant's vehicle had been parked. That officer approached defendant's vehicle, whereupon defendant was handcuffed and placed in the patrol car. Another officer arrived at the scene of the stop, and he permitted defendant to exit the patrol vehicle in order to speak to him. When the officer asked defendant where he had been and where he was going, defendant responded that he was en route to Binghamton, but that he needed to return to his home in Rochester to obtain money. At that time, although the burglary had been confirmed, the officer was not yet aware of the denominations of the money taken in the course of the burglary. Defendant gave the officer permission to conduct a pat-down frisk to check for weapons, and the officer felt a bulge in the front pocket of defendant's pants that felt like paper. The money was removed from defendant's pocket, and the officer obtained information regarding the denominations of the stolen money "within a minute or two" of the pat-down frisk. The officer testified that defendant was detained for approximately 15 to 20 minutes.

It is axiomatic that "not every seizure is an arrest" (*Hicks*, 68 NY2d at 239), and that the use of handcuffs is not "dispositive

of whether the detention of a suspect on a reasonable suspicion has been elevated into a full-blown arrest" (*People v Allen*, 73 NY2d 378, 380 [1989]). I submit that the facts here fit squarely within the conclusion of the Court of Appeals in *Hicks* that, " '[i]f the purpose underlying a *Terry* [*v Ohio*, 392 US 1 (1968)] stop—investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry*' " (68 NY2d at 241). As the Court in *Hicks* so aptly explained, when evaluating "whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria. [Further], in this examination it is appropriate to consider that the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. Finally, [a] court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing" (*id.* at 241-242 [internal quotation marks omitted]). In my view, these factors have been met here (*see Medina*, 37 AD3d at 242), and we should not engage in "unrealistic second-guessing" (*Hicks*, 68 NY2d at 242 [internal quotation marks omitted]).

When the police officers who were detaining defendant learned that the burglary was confirmed, they then had the requisite probable cause to arrest defendant (*see* CPL 140.10 [1] [b]), and the ensuing search was therefore conducted pursuant to the lawful arrest. I note that, in any event, the police knew that defendant was lying when he stated that he was en route to Binghamton but needed to return home to obtain money, and thus his "response raised the level of the encounter [from reasonable suspicion] to probable cause to believe that the defendant [had committed a burglary], justifying the search and arrest" of defendant (*People v Febus*, 11 AD3d 554, 556 [2004], *lv dismissed* 4 NY3d 743 [2004]; *see People v Abad*, 279 AD2d 358 [2001], *lv denied* 96 NY2d 796 [2001]; *People v Babarcich*, 166 AD2d 655 [1990], *lv denied* 76 NY2d 1019 [1990]).

I would therefore affirm the judgment in appeal No. 2, and thus I would also affirm the judgment in appeal No. 1.

Martoche, J. (dissenting). I respectfully dissent in both appeals. I agree with the majority's conclusion in appeal No. 2 that the evidence seized from defendant should have been suppressed as the fruit of an unlawful arrest, for the same reasons stated by the majority. I disagree with the majority's conclusion, however, that the error is not harmless beyond a reasonable

doubt. Aside from the money seized from defendant, the jury was presented with significant circumstantial evidence of defendant's guilt regarding the burglary, including a precise tracking by the police of defendant's movements in the early morning hours on the date of the burglary. According to that evidence, defendant drove to the neighborhood where the burglary was committed and circled around and parked for approximately 25 to 30 minutes near the home that was burglarized; items from a purse were found strewn in the vicinity where defendant parked, within minutes after defendant left the area; the purse and items found were missing from a home in the neighborhood where the burglary occurred; partial tread marks on the kitchen floor at the burglarized home matched the sneakers that defendant was wearing when he was apprehended, and did not match shoes owned by the owners of the burglarized home; canine tracking behind and up to the back of the homes in the neighborhood eventually stopped at the burglarized home; and defendant made inconsistent statements to the police when discussing his activities that evening and his behavior was of a suspicious nature. In light of that evidence of defendant's guilt, in my view there is no reasonable possibility that the error might have contributed to the conviction and thus the error "is harmless beyond a reasonable doubt" (*People v Crimmins*, 36 NY2d 230, 237 [1975]). Therefore, I conclude that the judgment of conviction in appeal No. 2 should be affirmed and that the judgment in appeal No. 1 also should be affirmed. Present— Scudder, P.J., Martoche, Green, Pine and Gorski, JJ.