[728 NYS2d 421]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAUDE ROBINSON, Appellant.

First Department, May 24, 2001

**APPEARANCES OF COUNSEL**

*Carol A. Remer-Smith* of counsel (*Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Rosemary Herbert* of counsel (*Lara Adamsons* on the brief; *Richard M. Greenberg*, attorney), for appellant.

**OPINION OF THE COURT**

Saxe, J.

This appeal raises the fundamental issue of when an investigative detention ripens into an arrest. Specifically, we are asked to consider whether a police officer's initially valid stop of an individual who is suspected of a crime becomes invalid when that individual is handcuffed, involuntarily transported to the police station and placed in a barred cell for two to three hours to await a lineup. We conclude that the combination of these elements constitutes an arrest which was unlawful in the absence of probable cause.

*Facts*

According to the testimony given by Officer Paul Wasielewski at the suppression hearing, at the start of his shift at the Sixth Precinct in Manhattan on December 21, 1995, he and the other officers received information about a series of "pattern robberies" at stores in Manhattan. They were told that the robber was a black male in his mid-20s or early 30s, 5 feet 7 inches to 6 feet tall, who usually wore sunglasses and a blue jacket with a bulldog decal on the back. The reported modus operandi of the perpetrator was to ask the store's employees at what time the store closed, sometimes look around or price an item, and then return at closing time to rob the store.

Officer Wasielewski testified that this was the third time he had heard about a robbery suspect fitting this description. Days before, he had learned that a black male wearing sunglasses and a blue jacket with a bulldog decal had robbed a store on Bedford Street. Further, several weeks before, Officer Wasielewski had responded to another call from a robbery victim who described the perpetrator with the same identifying characteristics.

At approximately 6:30 P.M. on December 21, Officer Wasielewski received a radio transmission concerning a suspicious male in a children's clothing store on Hudson Street in downtown Manhattan. He responded to the call along with Sergeant Clune, and proceeded to the store. Two witnesses in the store told Officer Wasielewski that a black man, wearing sunglasses and a blue jacket with a bulldog on the back, had come into the store for the second time and asked what time the store opens and closes. This time, the witnesses said, the man had another black man with him.

Officer Wasielewski consequently broadcast a description of the men over the radio, indicating that the man with the bulldog jacket and sunglasses was a possible suspect in a series of robberies and that the two men had left the store on Hudson Street. Officer Wasielewski waited inside the store for the suspects to return, and Sergeant Clune left to look for the suspects. By the time the store closed, the two men had not returned. The two store employees went home, and Officer Wasielewski returned to the station house.

At approximately 6:40 P.M., Officer Joseph Guzzino heard Officer Wasielewski's radio transmission and began canvassing the area in an unmarked car. Twenty minutes later, Officer Guzzino spotted the defendant, Claude Robinson, a few blocks from Hudson Street. He was wearing a blue Georgetown Hoyas jacket with a bulldog decal on the back. The officer observed him peering inside a candy store, looking up and down the street and sporadically talking to another man, later identified as Myles or Mills. Myles was leaning against the building where the candy store was located.

Officer Guzzino watched the two men for 20 minutes and followed them on foot as they walked a few blocks and stopped at a second store. Again, the officer observed the defendant peering inside the store, looking up and down the street and talking to Myles. At the hearing, the officer explained that he believed that the defendant was casing the stores in anticipation of robbing them: observing who was in the stores, what se-

curity systems were in place and generally trying to determine how easy it would be to carry out a robbery.

While watching the two men, Officer Guzzino spoke with Sergeant Clune over the radio and described the defendant's behavior and location. Following instructions from the sergeant, Officer Guzzino stopped the defendant and Myles at 7:20 P.M. on 14th Street, between Fifth Avenue and University Place. He frisked the men for weapons, but found none, although he did seize a pair of sunglasses from the defendant.

The defendant was then handcuffed, placed in a police car and transported to the Sixth Precinct. He was brought into the precinct, still handcuffed, placed in a holding cell, and informed that if he was not identified, he would be released. At approximately 10:31 P.M., three hours after he had been initially stopped by the police, the defendant was placed in a lineup, and identified by two victims as the perpetrator of a robbery that had occurred at a flower and antique store on December 19, 1995. The defendant was then placed under arrest, and his jacket seized.

The next day the defendant was identified in another lineup by the victims of a robbery that took place on November 14, 1995 at a handcrafts store on West 4th Street, and an attempted robbery that occurred on November 28, 1995 at a bookstore on West 12th Street.

The defendant was indicted on two counts of robbery in the first degree and one count of attempted robbery in the third degree.

His motion to suppress the sunglasses, jacket and lineup identification evidence as fruits of an illegal arrest was denied, except for the suppression of the sunglasses. He was then convicted, following a jury trial, of all counts.

*Analysis*

*Detention of Defendant*

■ On appeal, the defendant contends that he was in effect placed under arrest on 14th Street, prior to the time the officers obtained probable cause supporting his arrest, and that therefore his jacket and the lineup identifications should be suppressed.

The People now concede that, as the hearing court concluded, at the time defendant was detained on 14th Street, the police did not have probable cause to arrest him. However, they contend, the police nevertheless acted properly. It is conceded

that they had reasonable suspicion to believe that defendant was the subject of the report made that day by the women in the children's clothing store, and was also the man who had committed the previously reported store robberies. Therefore, they claim, their seizure of defendant was a proper, temporary investigative detention, rather than an arrest.

Given the unique nature of each crime investigation, and the speed at which circumstances develop, there is no fixed list of factors from which to determine when an investigatory detention ripens into an arrest (*see, People v Hicks*, 68 NY2d 234, 239). Instead, it has been said that the standard to be applied is whether a reasonable person, innocent of any crime, would have believed he was arrested if he was in the defendant's position (*People v Hicks, supra* at 240, citing *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). A proper temporary detention is one where a reasonable, innocent person would understand that he was being briefly detained in order to quickly obtain information either confirming or dispelling the officer's suspicion.

The determination does not turn on whether or not the suspect was told he was under arrest (*Dunaway v New York*, 442 US 200, 212) or whether the police thought their conduct was reasonable based on their objectives (*People v Hicks*, 68 NY2d 234, 243).

Of course, the scope of a reasonable investigatory detention will vary to some extent depending on the particular facts and circumstances of each case. However, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the methods employed to verify or dispel the officer's suspicion should be the least intrusive reasonably available.

It has repeatedly been held that when an individual is handcuffed, searched and placed in a police car for transport, the conduct constitutes an arrest (*see, People v Brnja*, 50 NY2d 366, 372; *People v Quarles*, 187 AD2d 200, 203, *lv denied* 81 NY2d 1018; *People v Foster*, 91 AD2d 1046, 1047, *appeal dismissed* 61 NY2d 640; *People v Pittman*, 83 AD2d 870, 871, *lv denied* 56 NY2d 813). While simply transporting a suspect to another location, or even to a police station, does not in and of itself require the conclusion that a temporary detention has become an arrest (*see, People v Hicks*, 68 NY2d 234, 239, 242; *People v Baily*, 216 AD2d 1, *lv denied* 86 NY2d 790), it is critical to consider how the detainee is treated once having arrived at the destination.

In *Hicks* (*supra*) the suspects were detained and transported to the nearby crime scene for an identification procedure within minutes of the crime (*id.* at 237). Indeed, in upholding the procedure, the Court was careful to note that "the authorities knew that a crime had actually been committed; the total period of detention was less than 10 minutes, the crime scene to which defendant was taken was very close, and eyewitnesses were there; and there [was] no proof of significantly less intrusive means available to accomplish the same purpose [to quickly confirm or dispel reasonable suspicion]" (*id.* at 243). It also noted that "[d]efendant was not handcuffed, there was no show of force, he was permitted to park the car nearby before accompanying the police, he was not taken to the police station, [and] the total time and distance involved were very brief" (*id.* at 240). In contrast, in *People v Baily* (*supra*), a proper temporary detention turned into an unlawful arrest when, after transporting the suspect to the precinct, the police put her in a cell for an hour.

Furthermore, while the act of handcuffing a suspect does not necessarily convert a detention into an arrest, cases approving the handcuffing of suspects in the context of nonarrest detention have generally specified that the handcuffing is permissible in order to ensure the officers' safety until they can conduct a pat-down for weapons (*see, People v Allen*, 73 NY2d 378, 379; *People v Acevedo*, 179 AD2d 465, *lv denied* 79 NY2d 996; *but see, People v Boyd*, 272 AD2d 898, *lv denied* 95 NY2d 850). Indeed, the Court in *Allen* was careful to explain that the case "[did not] involve the unnecessary, prolonged handcuffing of a suspect detained on reasonable suspicion after the threat justifying the use of handcuffs ha[d] been neutralized" (*People v Allen, supra* at 380). In the present case, the police handcuffed the defendant *after* they patted him down and learned that he was unarmed (*see, People v Battaglia*, 56 NY2d 558).

Lastly, the combination of the length of time a defendant is detained and the manner in which he is held is of critical importance. Being taken involuntarily, handcuffed and transported to a police station, and then held in a barred cell for over two hours, requires the conclusion that the initially proper detention of defendant in this matter developed into an arrest. These circumstances are distinguishable from those temporary detentions of 10, 20, or 30 minutes that have been upheld (*see, People v Hicks, supra; People v Pinkney*, 156 AD2d 182, *lv denied* 75 NY2d 870). And, while longer detentions have been upheld in the absence of probable cause (*see, People*

*v Ortiz*, 232 AD2d 180, *revd on other grounds* 90 NY2d 533; *People v Maybell*, 198 AD2d 108, *lv denied* 82 NY2d 927), in those matters the suspects were stopped and held at the crime scene in order to permit the police an opportunity to arrange showup identification procedures. Nor is the present situation comparable to noncustodial detentions of one to four hours where the defendant was not handcuffed and had voluntarily accompanied the police to the precinct (*see, People v Delfino*, 234 AD2d 382, 383, *lv denied* 89 NY2d 1034; *People v Blake*, 177 AD2d 636, *lv denied* 79 NY2d 853; *People v Forbes*, 182 AD2d 829, *lv denied* 80 NY2d 895).

The present case is controlled by our ruling in *People v Baily* (*supra*), where this Court held that the detention of a defendant in a cell for an hour constituted an arrest. Similarly, in *People v Rivers* (129 AD2d 983, 985), the court held that detaining and interrogating a defendant at the police station for more than two hours was unlawful when based on less than probable cause. And, in *People v Barnes* (101 Misc 2d 76, 84), the defendant who was placed in a police car, handcuffed, transported to the police precinct and handcuffed to a chair for 4½ hours was held to have been subjected to a full-blown arrest.

The People protest that given the officers' reasonable belief that defendant was the perpetrator of the reported "pattern robberies," their detention of defendant was the least intrusive possible means of proceeding to confirm or dispel their suspicion. We disagree.

Where an individual is suspected of crimes that occurred not minutes or hours earlier, but days or weeks earlier, the police are unlikely to be able to carry out the type of procedures approved in *People v Hicks*, that is, a *brief* transport to a *nearby* site for a *speedy* procedure to confirm or dispel suspicion, since the victims are unlikely to be nearby to make a speedy identification of the suspected perpetrator. It does not follow that this additional difficulty will entitle the police to employ substantially more expansive versions of the "minimally intrusive" procedures available when the crime just occurred and the victims remain nearby. What the police did here, as a practical matter, was to place defendant under arrest in order to obtain sufficient evidence to arrest him.

Less intrusive ways of proceeding with an investigation under such circumstances would include inquiring further of the suspect (*see, Matter of Kwok T.*, 43 NY2d 213, 218); asking him for identification (*People v Ocasio*, 85 NY2d 982; *People v Wilson*, 57 NY2d 786, 787) and checking the validity of any he

provided; explaining the situation and asking for his voluntary cooperation with a lineup in the interest of dispelling their suspicions (*People v Wilson, supra*); photographing defendant and creating a photo array for later use (*see, People v Pinkney*, 156 AD2d 182, *lv denied* 75 NY2d 870).

Pursuant to the facts as provided by the testifying officers, their actions exceeded a temporary, investigative detention of defendant. Although the police acted properly when they stopped the defendant and frisked him (*People v Lewis*, 123 AD2d 716, 718), they turned that lawful stop into a de facto arrest by handcuffing the defendant, placing him in a police car, transporting him to the police station and holding him in a cell for two to three hours before placing him in a lineup for an identification procedure. Because defendant's de facto arrest was not based upon probable cause, the jacket and all the lineup identifications should have been suppressed (*Wong Sun v United States*, 371 US 471).

In view of our remand for retrial, we comment briefly on other evidentiary challenges raised by defendant.

### The 911 Tapes

■ The trial court properly admitted into evidence two of the taped 911 calls made by robbery victims, as present sense impressions, that is, spontaneous descriptions of events made substantially contemporaneously with the observation of such events where the descriptions are sufficiently corroborated by other evidence (*see, People v Brown*, 80 NY2d 729, 734). Laurie D. called the police two seconds after the perpetrator left the store, and Susan B. made her 911 call between 15 and 45 seconds after the robbery in that store was over. These calls were close enough in time to be recitations of the robbery victims' present sense impressions. Nor is there a corroboration problem, since the declarants testified in court, giving the defendant the opportunity to verify and test the statements' trustworthiness as an added assurance of reliability (*see, People v Buie*, 86 NY2d 501, 512).

However, it erred in admitting the tape of the 911 call made by Daria S. Ms. S. testified that when she made the 911 call, between 2 and 4½ minutes had passed since the robber left the store. More important, she did not call the police immediately after observing the robbery; rather, she called her employer before calling 911 to report the robbery she had witnessed. Although that time span may have been sufficiently close to be substantially contemporaneous, it cannot be said under these circumstance that she did not have time to reflect on the event (*see, People v Vasquez*, 88 NY2d 561).

However, this error alone would not have warranted reversal, in light of the overwhelming evidence of the defendant's guilt (*People v Gutierrez*, 248 AD2d 295, *lv denied* 92 NY2d 925).

*Lesser Included Offense*

The trial court properly rejected defendant's request to charge robbery in the third degree as a lesser included offense. Given the victims' testimony, there was no reasonable view of the evidence that would have permitted the jury to find that it was the defendant who committed the robberies but that he did so without displaying what appeared to be a firearm (*see, People v Ruiz*, 216 AD2d 63, *affd* 87 NY2d 1027).

Accordingly, the judgment of the Supreme Court, New York County (Carol Berkman, J., at hearing; Richard Carruthers, J., at trial and sentence), rendered July 8, 1996, convicting defendant, after a jury trial, of two counts of robbery in the second degree and one count of attempted robbery in the third degree, and sentencing him, as a persistent violent felony offender, to concurrent terms of 25 years to life, should be reversed, on the law, defendant's motion to suppress physical evidence and all out-of-court identifications granted in all respects and the matter remanded for a new trial to be preceded by an independent source hearing as to all identifying witnesses.

WILLIAMS, J. P., TOM, ANDRIAS and LERNER, JJ., concur.

Judgment, Supreme Court, New York County, rendered July 8, 1996, reversed, on the law, defendant's motion to suppress physical evidence and all out-of-court identifications granted in all respects and the matter remanded for a new trial to be preceded by an independent source hearing as to all identifying witnesses.