OPINION OF THE COURT
James P. Sullivan, J.
The defendant William Fleming is charged with robbery in the first degree and related charges. He has moved to suppress physical evidence seized by the police on the ground that it was the product of an illegal arrest effectuated without probable cause (see Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]), as well as a line-up identification and statement, on the grounds that they were the fruits of the unlawful arrest.
A pretrial suppression hearing was held before me on January 31 and February 1, 2007. Officer Edwin Santiago and Sergeant James Knoebel testified on behalf of the prosecution. On February 5, 2007, the court directed both parties to submit case law on the question presented by the hearing. Instead, the People submitted a motion to reopen the hearing, which was orally denied on March 6, 2007.[1] The parties have also submitted memoranda of law on the issue of probable cause. I make the following findings of fact and conclusions of law:
Findings of Fact
On November 30, 2005, at about 5:00 p.m., Officer Santiago, an anticrime officer in the 73rd Precinct, interviewed the complaining witness at the precinct. The complaining witness indicated that he had been robbed that day at about 4:00 p.m. He told the officer that he had been robbed in front of his home at gunpoint by three black men who took his jewelry. The *708 complaining witness stated that, after the robbery, the men had jumped into a new model Dodge Charger, possibly maroon or orange, with custom wheels the same color as the car.[2]
On December 10, 2005, at about 1:00 p.m., Officer Santiago was with his partner, Officer Baranett, in an unmarked car. The officers were heading northbound on Eastern Parkway near Fulton Street. Officer Santiago saw a car making a right turn onto Eastern Parkway heading southbound. According to Officer Santiago, he knew that the car went through a steady red light, because since he and his partner had a green light, this car must have had a red light. Officer Santiago made a U-turn and pulled the car over for a traffic stop. He approached the car and asked for a driver’s license, registration and insurance, which were provided. The defendant, William Fleming, was the driver and registered owner, and there were two other black men in the car. Officer Santiago did not issue a summons for the traffic violation, but next called two fellow officers in a car equipped with a mobile digital terminal to come to the scene, so that they could run the license plate of the defendant’s car. According to Officer Santiago, it was only at this point that he spoke to his partner and noted that the stopped car looked like the car that had been described to him 10 days earlier as possibly being used in a robbery. The car was an orange Dodge Charger, with custom orange rims in a “star” pattern.
After the license plate was run, the computer revealed that there was an “alarm” from the 114th Precinct in Queens that the car was “used in the commission of a crime.” There was also some indication that a “male black, 31” was sought in connection with a gunpoint robbery. Officer Santiago also testified that the name “associated” with the car was the defendant’s, that is, that the car was registered to him. According to Officer Santiago, once he knew that the car was used in the commission of a crime, and that the car was “connected” to the defendant, he had an “apprehension.” At that point, he had all three men in the car placed in handcuffs and taken back to the precinct. Officer Santiago testified that the other two men were arrested for “further investigation,”
JJ *709 because there were allegedly three black men involved in the Brooklyn robbery.[3]
The defendant was brought to the 73rd Precinct at about 1:00 p.m. Sergeant James Knoebel was supervising Detective Fuentes, the detective assigned to this case. At about 5:00 p.m., Sergeant Knoebel and Detective Fuentes interviewed the defendant after reading him Miranda warnings. The defendant agreed to speak to them, and gave an oral and then written statement. The Miranda warnings, which defendant initialed, and the written statement were introduced into evidence at the hearing. The defendant stated, in substance, that on November 30, 2005, he was retrieving his jewelry from a pawnshop when he saw two people he knew running, one of whom he believed had a gun. One of the men tried to get into his car for a getaway, but the defendant did not permit him. The defendant drove away after he saw someone chasing this man, and shouting, “Thief, thief.”
Later that evening, the complainant came to the precinct to view a lineup. Detective Fuentes and Sergeant Knoebel were in the viewing room with the complainant when he viewed the lineup. According to Sergeant Knoebel, the complainant selected the defendant, who was in the fifth position, as one of the robbers. Detective Fuentes was unavailable to testify as a witness, but the parties stipulated that if he had been called, Detective Fuentes would testify that the complainant stated, “If it’s someone, it has to be Number 5.” Sergeant Knoebel did not recall the complainant making this statement.
Conclusions of Law
A police officer may arrest a person without a warrant when the officer has probable cause to believe that the person has committed a crime. (People v Johnson, 66 NY2d 398, 402 [1985].) While probable cause does not require the .same quantum of proof needed to warrant a conviction, it does require sufficiently specific and detailed descriptions and circumstances which would lead a police officer to reasonably conclude that the defendant was the perpetrator of the crime. (People v Harris, 224 AD2d 711 [2d Dept 1996]; see also People v Bigelow, 66 NY2d 417, 423 [1985]; People v Kennedy, 282 AD2d 759, 759-760 [2d Dept 2001].)
*710 The court finds that the defendant was validly stopped for a traffic infraction, and that the police had the authority to run the license plate as part of that traffic stop. (See People v Diggs, 38 AD3d 565 [2d Dept 2007].) However, once the officer placed the defendant in handcuffs, transported him to the precinct, and held him there for four hours before questioning him, this was plainly an arrest requiring probable cause. (See People v Brnja, 50 NY2d 366, 372 [1980]; People v Robinson, 282 AD2d 75, 80 [1st Dept 2001].) The People argue that probable cause was established because the testimony revealed that Officer Santiago knew that the defendant William Fleming was “wanted” in connection with a Queens robbery. However, Officer Santiago gave no such testimony. On several occasions, he testified that the computer report revealed that the car the defendant was driving was used in the commission of a crime, and that the car was registered to the defendant. He candidly admitted that once it became clear to him that the car had been used in a crime, and that the defendant’s name was “connected” with the car, he made an arrest.[4] While it is true that a police officer may rely upon information communicated by a fellow officer that an individual is the subject named in an outstanding warrant in making an arrest, information about the content of the communication must be presented to tne court so that it can make a determination of whether there was probable cause for the arrest. (See People v Jennings, 54 NY2d 518, 522 [1981]; People v Boone, 269 AD2d 459 [2d Dept 2000].) In Boone, the Court found that the People were not required to produce the arrest warrant that was the basis of the defendant’s arrest, because the arresting detective testified “in detail” regarding the information received about the warrant (269 AD2d at 459). The Court found that the testimony established the existence of a “validly-issued and outstanding warrant,” pursuant to which the detective arrested the defendant. (269 AD2d at 459; see also People v Lee, 126 AD2d 568, 569 [2d Dept 1987]; People v Ferguson, 115 AD2d 615, 616 [2d Dept 1985].) Here, in contrast, not *711 only was there no “detail” concerning the nature of the “warrant,” but there was no testimony that established even that there was a warrant or a wanted card for the defendant, separate from his status as the registered owner of the vehicle. The People speculate in their memorandum of law that it “appears” that Officer Santiago was directed to arrest the defendant, but the court can make no such conclusion based on the testimony presented.
The next question presented is whether Officer Santiago possessed sufficient information to establish probable cause, if he was not aware of a warrant or wanted card for the defendant’s arrest. Officer Santiago knew that the car that the defendant was driving had been identified as used in the commission of a crime, and that the defendant was the registered owner of the car. He also knew that 10 days before, a robbery had been reported describing a car used that was similar to the one that the defendant was driving, namely, an orange or maroon Dodge Charger with custom wheels. The only description provided of the robbers was that of three black men. The latter fact adds nothing to the equation, given the sheer number of people matching such a “description.” (See e.g., People v Dossantos, 137 AD2d 763, 763 [2d Dept 1988] [a vague and general description which could fit a “large sector” of the population not sufficient for probable cause finding].) While Officer Santiago also possessed an apparent description of the Queens robber as a 31-year-old black man, this description, too, is too scanty to contribute to a finding of probable cause.[5]
The People argue that this information provided Officer Santiago with probable cause for an arrest even without a warrant or wanted card for his arrest. They cite several cases in support of the proposition that the description of a “unique” car coupled with “general descriptions” of perpetrators provide the police with probable cause for an arrest. However, these cases can be distinguished. Not only were there matching descriptions, but the “closeness of the spatial and temporal factors” heavily contributed to the finding of probable cause. (See People v Hayes, 291 AD2d 334, 335 [1st Dept 2002]; People v Jordan, 178 AD2d 1009, 1010 [4th Dept 1991].) In these situations, one police officer has heard a description of a car and its occupants on a radio *712 transmission immediately after, or soon after, a crime has occurred and the question is whether the apprehending officer has probable cause for an arrest based on the transmission. (See id.; People v Merritt, 145 AD2d 827, 828 [3d Dept 1988].) Here, the situation was entirely different. The officer stopped the car 10 days after the Brooklyn robbery occurred, and he was not acting on a transmission that was close either spatially or temporally. Moreover, as noted above, he did not have a description of the robbers. While the information he did have may have provided him with reasonable suspicion to stop and detain the defendant, it did not provide probable cause for an arrest. (See People v Jones, 37 AD3d 163 [1st Dept 2007]; People v Panzarino, 282 AD2d 292 [1st Dept 2001].) In Panzarino, the victim provided a description of the robbers’ age, height, and weight, and a bystander provided a license plate number. When the police saw the defendant, who matched the description, driving the car a few days later, the Court found that there was reasonable suspicion to stop the car. The police had probable cause to arrest only after the defendant admitted that he had been driving the car for the past six months. Similarly, in Jones, an undercover field team broadcast “detailed descriptions of defendant, the driver and the car.” (37 AD3d at 163.) When the officer later approached a car that matched the description, he could see that the occupants fit the descriptions of the individuals involved, and therefore he had reasonable suspicion to detain the defendant for an identification by the undercover officer. The Court took pains to note that the officer stopped the car on more than a description of the car, but also based on the descriptions of the occupants. (37 AD3d at 163.)
These cases suggest that, at most, Officer Santiago had reasonable suspicion to detain the car for further investigation, but not probable cause for a full-blown arrest. For example, in Panzarino, the police had probable cause to arrest the defendant only after he admitted he had been driving the car for six months. A critical failing in the People’s argument is that the police made no effort to establish whether the car had been driven by anyone else during the past 10 days, whether anyone had access to it, or, indeed, if it had been borrowed or reported stolen. A case actually cited by the People in their memorandum also provides support for this principle. In United States v Gaines (563 F2d 1352, 1358 [9th Cir 1977]), the officer asked investigatory questions before arresting the defendant, discovering that he and his girlfriend had sole use of the car that had *713 been linked to a bank robbery. Similarly, in Robinson, the Court noted “[l]ess intrusive ways” short of arrest, including inquiring further of the suspect, asking for voluntary cooperation in a lineup, or photographing the defendant and creating a photo array for later use. (282 AD2d at 81.) Here, the officer’s failure to undertake any investigation, perhaps by contacting the Queens precinct to get further information, is evidenced by his arrest of all three men in the car, despite having no information linking the nondrivers to any crime. Had the officer conducted any further investigation, or made inquiries of the defendant, reasonable suspicion might have ripened into probable cause. However, the court is constrained to find that no probable cause existed for an arrest of the defendant under the circumstances presented.
Since there was no probable cause for the defendant’s arrest, any property seized as a result of the unlawful arrest must be suppressed. Additionally, the statement and the lineup identification must be suppressed as the fruit of the unlawful police action. Accordingly, the defendant’s motion to suppress is granted.

. The People had one “full opportunity” to present evidence of the dis-positive issues in the hearing. (People v Havelka, 45 NY2d 636, 643 [1978].) This was not a situation where the court unexpectedly expanded the scope of the hearing, or made an error of law that prevented the People from offering their proof. (Id.; see also People v Williams, 260 AD2d 513 [2d Dept 1999].) Moreover, in their motion to reopen the hearing, the People asked to present testimony from another witness, a witness who could have been presented at the initial hearing, and who in any event would not have been able to illuminate on what basis Officer Santiago acted. The People had every opportunity to present evidence of probable cause at the initial hearing, and the court found no basis to provide them with a second bite at the apple. (See People v Broughton, 163 AD2d 404, 405 [2d Dept 1990]; People v Robinson, 100 AD2d 945, 947 [2d Dept 1984].)

. The officer also testified that the complainant “said star, you know, and it had — that the wheels had color in the — you know, it was chrome with col- or. JJ

. Officer Santiago recovered about 10 pieces of jewelry from the defendant, approximately $1,330 in currency, and several cell phones. The other two men arrested were not charged with any crime in connection with this case.

. While at one point on redirect, the prosecutor asked the leading question: “And 3 ju also said you placed Mr. Fleming under arrest after you got the MDT report that he was wanted with his car on a robbery, is that correct?”, and Officer Santiago responded that it was, the court does not find that this was an accurate restatement of the officer’s testimony, and on its own, is somewhat ambiguous and insufficient to demonstrate that Officer Santiago was aware of a warrant for the defendant’s arrest or a wanted card. Notably, the court asked its own question at a later point if the officer was aware of any “wanted cards,” and he replied that he was not.

. The court notes that given the specificity of the age “description,” it is unclear whether this part of the bulletin referred to a description given by a complainant, or merely a description of the registered owner of the car. Officer Santiago did not provide any detail as to the source of this “description.”