People v Harmon (2019 NY Slip Op 02249)





People v Harmon


2019 NY Slip Op 02249


Decided on March 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, LINDLEY, TROUTMAN, AND WINSLOW, JJ.


1379 KA 16-00782

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DEVINE M. HARMON, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, SULLIVAN & CROMWELL LLP, NEW YORK CITY (JOHN P. COLLINS, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Christopher S. Ciaccio, J.), rendered January 13, 2016. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the third degree (Penal Law § 265.02 [5] [ii]). We reject defendant's contention that the police lacked the requisite reasonable suspicion to stop and detain him, and thus we conclude that County Court properly refused to suppress the gun recovered from his person. The record establishes that the arresting officer responded to a 911 call reporting two black males passing a gun between each other outside of a bar. The officer responded to the bar and spoke with the 911 caller, who pointed to another bar down the street and indicated that the suspects were "right down there." The officer observed a group of five to six men standing outside the second bar and approached them. Defendant, who matched the clothing description provided by the 911 caller, "swiftly" walked into the bar. The officer pursued defendant into the bar's bathroom, where the officer immediately placed handcuffs on defendant before escorting him outside. Once outside, the officer asked defendant if he had any objects on him that could harm the officer or anything that he "shouldn't have," and defendant replied that he had a gun. The officer then discovered a .22 caliber pistol on defendant's right hip.
We analyze this case in light of the framework stated in People v De Bour (40 NY2d 210, 222-223 [1976]). Based on the 911 call regarding two black men passing a weapon, the fact that defendant matched the clothing description provided by the caller, the caller's subsequent indication that the suspects were "right down there" in front of another bar, and the temporal proximity between the moment the officer saw defendant and the moment when the 911 caller observed the men passing the weapon, the officer "initially had a common-law right of inquiry based upon a founded suspicion that criminal activity was afoot," thereby rendering the police encounter lawful at its inception (People v Price, 109 AD3d 1189, 1190 [4th Dept 2013], lv denied 22 NY3d 1043 [2013]; see People v Gayden, 126 AD3d 1518, 1518 [4th Dept 2015], affd 28 NY3d 1035 [2016]; People v McKinley, 101 AD3d 1747, 1748 [4th Dept 2012], lv denied 21 NY3d 1017 [2013]).
Although "[f]light alone is insufficient to justify pursuit' " (People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010], quoting People v Holmes, 81 NY2d 1056, 1058 [1993]), "a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion" (People v Sierra, 83 NY2d 928, 929 [1994]; see People v [*2]Martinez, 59 AD3d 1071, 1072 [4th Dept 2009], lv denied 12 NY3d 856 [2009]). Here, defendant's flight into the bar, combined with the other circumstances described above, provided the officer with reasonable suspicion permitting pursuit (see People v Woods, 98 NY2d 627, 628-629 [2002]; Martinez, 59 AD3d at 1072).
We reject defendant's contention that the use of handcuffs transformed the encounter into an arrest prior to the discovery of the gun. The officer responded to a call regarding a weapons offense, and was thus "entitled to handcuff defendant to effect his nonarrest detention in order to ensure [his] own safety while [he] removed [defendant] to a more suitable location" (People v Allen, 73 NY2d 378, 379 [1989]; see also People v Galloway, 40 AD3d 240, 240-241 [1st Dept 2007], lv denied 9 NY3d 844 [2007]; People v Robinson, 282 AD2d 75, 80 [1st Dept 2001]). Upon discovering the weapon on defendant's person, the officer gained probable cause to arrest. In light of the foregoing, we also reject defendant's contention that the court should have suppressed his oral and written statements as the product of an illegal seizure.
We further reject defendant's contention that the court should have suppressed the statements as the product of a custodial interrogation prior to the reading of defendant's Miranda warnings. The officer's question whether defendant had "anything on him that will hurt [the officer], cut [him] or [that defendant] shouldn't have" did not require the officer to first read defendant his Miranda warnings (see People v Chestnut, 51 NY2d 14, 22-23 n 8 [1980], cert denied 449 US 1018 [1980]; People v Rose, 129 AD3d 1631, 1632 [4th Dept 2015], lv denied 27 NY3d 1005 [2016]; People v Roseboro, 124 AD3d 1374, 1375 [4th Dept 2015], lv denied 27 NY3d 1005 [2016]).
Entered: March 22, 2019
Mark W. Bennett
Clerk of the Court